740 A.2d 153 (1999)
325 N.J. Super. 556
STATE of New Jersey, Plaintiff-Respondent,
v.
Michael NEWMAN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 28, 1999.
Decided November 5, 1999.
*154 Ivelisse Torres, Public Defender, for defendant-appellant (J. Michael Blake, Assistant Deputy Public Defender, of counsel and on the brief).
John J. Farmer, Jr., Attorney General, for plaintiff-respondent (Christine M. D'Elia, Deputy Attorney General, of counsel and on the brief).
Before Judges MUIR, Jr., WALLACE, Jr., and CUFF.
The opinion of the court was delivered by MUIR, Jr., P.J.A.D.
This appeal requires us to determine whether the No Early Release Act (Act), N.J.S.A. 2C:43-7.2, applies to defendant's conviction for reckless manslaughter and, if so, whether the Act's mandatory 85% minimum parole ineligibility provision violates the proscriptions against cruel and unusual punishment contained in the United States and New Jersey Constitutions. We conclude the Act applies to defendant's reckless manslaughter conviction and does not violate the cruel and unusual punishment proscriptions of the state and federal constitutions in this instance.

I
A Cumberland County Grand Jury indicted defendant on two counts of felony murder, N.J.S.A. 2C:11-3a(3); one count of first-degree robbery, N.J.S.A. 2C:15-1; one count of second-degree burglary, N.J.S.A. 2C:18-2; and one count of third-degree conspiracy to commit burglary, N.J.S.A. 2C:18-2, N.J.S.A. 2C:5-2. Pursuant to a negotiated plea, defendant pled guilty to the amended offense of reckless manslaughter, N.J.S.A. 2C:11-4b. The plea agreement allowed the prosecutor to argue for the applicability of the Act.
The trial court imposed a 10-year term of imprisonment. It also ruled the Act applicable and, consequently, imposed an 8½-year parole ineligibility term with a 3year term of parole supervision upon release from jail. The court further imposed appropriate monetary penalties.
The facts elicited at the plea provided the predicate for the guilty plea. Defendant admitted that on November 7, 1997, he went to the home of Russell Hockenberry in the City of Bridgeton for the purpose of entering the house with intent to steal. Defendant believed Hockenberry was not home at the time. Upon entry through a door, defendant was surprised by Hockenberry's presence. Defendant claimed Hockenberry, who was startled by defendant's presence, fell back, down a set of stairs, and was knocked unconscious.
Defendant admitted he proceeded down the stairs, apparently to confirm the victim was unconscious. At that time, defendant placed a pillow under the victim's head. He then left the house only to return about one-half hour later when he again found the victim still unconscious. He again left and made no effort to summon assistance *155 for the victim. The victim died as a consequence of the fall.
Defendant's presentence report contained information provided by a police report. In response to a report by local postal authorities that mail was accumulating at the victim's home, a Bridgeton police officer went to the home where he found the 70-year-old victim dead at the foot of the stairs. The victim died of a subdural hematoma caused by a fractured skull. The door of the house had been pried open with a screwdriver. Defendant's nephew told police he overheard defendant say on a telephone call he had pushed the victim down the stairs. Defendant denied pushing the victim. See State v. Sainz, 107 N.J. 283, 293, 526 A.2d 1015 (1987) ("When a trial court imposes a sentence based on defendant's guilty plea, the defendant's admissions or factual version need not be the sole source of information for the court's sentencing decision ... [and] the court may look to other evidence in the record when making such determinations....").

II
The Act in pertinent part provides:
a. A court imposing a sentence of incarceration for a crime of the first or second degree shall fix a minimum term of 85% of the sentence during which the defendant shall not be eligible for parole if the crime is a violent crime as defined in subsection d. of this section.
....
c. Notwithstanding any other provision of law to the contrary and in addition to any other sentence imposed, a court imposing a minimum period of parole ineligibility of 85 percent of the sentence pursuant to this section shall also ... impose ... a three-year term of parole supervision if the defendant is being sentenced for a crime of the second degree....
d. For the purposes of this section, "violent crime" means any crime in which the actor causes death....

[N.J.S.A. 2C:43-7.2.]
Defendant argues: (1) the Act's absence of a degree of culpability requires courts to insert "knowingly" as the degree of culpability required for application of the Act, and (2) the Act does not apply to second-degree reckless manslaughter because it is not a "violent crime" within the Act's intendment. We reject both contentions.
Defendant's first contention that we should insert the word "knowingly" before the words "causes death" overlooks the distinction between statutes defining offenses and those establishing parole ineligibility standards. The New Jersey Criminal Code under N.J.S.A. 2C:2-2, "General Requirements of Culpability," defines the various types of culpability that may be material elements of an offense. Under N.J.S.A. 2C:2-2c(3), when "no culpable mental state is expressly designated in a statute defining an offense " and "the proscribed conduct necessarily involves such culpable mental state," a statute defining a crime should construe "knowingly" as the culpability element. (Emphasis added.) Consequently, the plain language of N.J.S.A. 2C:2-2c(3), creating the need to impute the "knowingly" culpability standard, only applies to statutes defining offenses.
No reasonable or fair reading of the Code imputes "knowingly" as a standard to qualify the applicability of the Act. The Act does not prescribe elements of an offense. It imposes its enhanced parole ineligibility after determination of guilt and proof of the elements of the underlying crime. Simply put, the statute imposing standards for an enhanced parole ineligibility does not implicate the Code prescript to impute a culpability standard as an element of certain offenses. See State v. Des Marets, 92 N.J. 62, 68-69, 455 A.2d 1074 (1983).
The plain language of the Act similarly cripples defendant's contention that reckless manslaughter is not a violent *156 crime within the Act's intendment. The premier principle guiding a court's search for legislative intent is the Act's plain language. See State v. Butler, 89 N.J. 220, 226, 445 A.2d 399 (1982). "If a statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." Ibid.
Here, the plain language admits only one interpretationreckless manslaughter falls within its prescripts. The Act's language is susceptible to no other interpretation. The Act defines a violent crime as one in which the actor causes death. The word "cause" is conventionally defined as that which produces a result or consequence. See The American Heritage Dictionary of the English Language 214 (1970).
Applying that definition, it is undisputed defendant caused the victim's death. Even if we accept defendant's version of the event, which arguably is unconvincing given the evidence defendant was overheard admitting he pushed the victim down the steps, defendant's conduct caused the victim's death. In the best scenario from defendant's viewpoint, that defendant surprised or startled the victim, it was defendant's conduct that produced the victim's death. The language of the Act consequently admits no other interpretation except that it is applicable to a conviction for reckless manslaughter.

III
Anticipating the applicability of the Act to his reckless manslaughter conviction, defendant argues the 85% parole ineligibility enhancement violates the state and federal constitutional proscriptions on cruel and unusual punishment. We again disagree.
In Des Marets, supra, 92 N.J. at 82, 455 A.2d 1074, the Supreme Court considered a similar challenge to the Graves Act. There, defendant asserted the Graves Act violated the cruel and unusual punishment provision of the state constitution, N.J. Const. art. I, ¶ 12.
The Court delineated the parameters for determining whether the punishment prescribed by a legislative enactment violated the constitutional proscription. The Court instructed:
In considering this claim, we inquire whether the nature of the criticized punishment shocks the general conscience and violates principles of fundamental fairness; whether comparison shows the punishment to be grossly disproportionate to the offense; and whether the punishment goes beyond what is necessary to accomplish any legitimate penal aim. The showing that must be made to sustain the claim is substantial.
[Des Marets, supra, 92 N.J. at 82, 455 A.2d 1074 (citations omitted)]
Noting the magnitude and severity of the problem of violent crime, the Court found the Graves Act sentence, as applied to the specific facts, did not constitute cruel and unusual punishment under the New Jersey Constitution. Id. at 82, 455 A.2d 1074.
In State v. Maldonado, 137 N.J. 536, 547, 645 A.2d 1165 (1994), the Court addressed the issue of whether the strict liability punishment imposed for a drug death conviction violated the cruel and unusual punishment proscriptions of both state and federal constitutions. There, the Court identified a three-part inquiry, one similar to that of Des Marets, to determine whether a punishment is unconstitutionally cruel and unusual.
"First, does the punishment for the crime conform with contemporary standards of decency? Second, is the punishment grossly disproportionate to the offense? Third, does the punishment go beyond what is necessary to accomplish any legitimate penological objective?"
[Maldonado, supra, 137 N.J. at 556-57, 645 A.2d 1165 (quoting State v.. Ramseur, 106 N.J. 123, 169, 524 A.2d 188 (1987)).]
*157 Assimilating the criteria of Des Marets and Maldonado to address the cruel and unusual claim defendant raises to the sentence imposed here, we need go no further than to note the magnitude and severity of the crime defendant committed to conclude the claim is unavailing. A criminal homicide is one of the most malodorous and violent offenses proscribed by our criminal laws. Viewed in the context of that truism, there is no justifiable basis for concluding any of the assimilated criteria are demonstrated, never mind substantially so. Contrary to defendant's contention, there is no rational basis for concluding the punishment imposed on defendant, as a consequence of the Act, is grossly disproportionate to the crime.
Affirmed.