746 A.2d 998

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. WILLIAM
BURFORD, DEFENDANT–RESPONDENT.

Argued February 1, 2000—Decided March 14, 2000.

*Gary A. Thomas,* Special Deputy Attorney General, argued the cause for appellant (*Donald C. Campolo,* Assistant Attorney General, Acting Essex County Prosecutor, attorney).

*Jacqueline E. Turner,* Assistant Deputy Public Defender, argued the cause for respondent (*Ivelisse Torres,* Public Defender, attorney).

*Russell J. Curley,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*John J. Farmer, Jr.,* Attorney General, attorney).

PER CURIAM.

■ The central question in this appeal is whether defendant's second-degree eluding conviction qualifies as a "violent crime" subjecting defendant's sentence to the eighty-five percent minimum term of the "No Early Release Act" (NERA or the Act), *N.J.S.A.* 2C:43–7.2. Not before us are any constitutional challenges to the Act. The specific question is whether defendant's use of a stolen automobile to elude police and his reckless striking of another vehicle during the chase made the stolen automobile a "deadly weapon" under NERA.

*N.J.S.A.* 2C:43–7.2 provides:

a. A court imposing a sentence of incarceration for a crime of the first or second degree shall fix a minimum term of 85% of the sentence during which the defendant shall not be eligible for parole if the crime is a violent crime as defined in subsection d. of this section.

*N.J.S.A.* 2C:43–7.2d states in pertinent part:

For the purposes of this section, "violent crime" means any crime in which the actor causes death, causes serious bodily injury as defined in subsection b. of *N.J.S.A.* 2C:11–1, or uses or threatens the immediate use of a deadly weapon.

It is undisputed that defendant neither caused death nor serious bodily injury. The only issue is whether he used or threatened the use of a deadly weapon.

*N.J.S.A.* 2C:43–7.2d defines "deadly weapon" as any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury.

The trial court held that the Act did not apply because defendant did not intend to use the vehicle as a "deadly weapon." On appeal, the Appellate Division upheld the trial court's ruling. We agree and affirm substantially for the reasons stated in the Appellate Division opinion reported at 321 *N.J.Super.* 360, 729 *A.*2d 52 (1999). Relying on that court's decision in *State v. Riley*, 306 *N.J.Super.* 141, 703 *A.*2d 347 (App.Div.1997), it explained:

We noted in *Riley* that deadly weapons can be divided into two categories: firearms, which are per se deadly weapons and every other object which may or may not be a deadly weapon. *Id.* at 146, 703 *A.*2d 347. Within the catch-all non-firearm category are other per se weapons, that are not firearms "namely objects that, by their nature, have no apparent use or purpose other than the infliction of death or serious bodily harm and whose likelihood of possession for a lawful purpose is so remote that their possession by persons who are not members of the military or a law enforcement unit is interdicted by law." *Id.* at 146–47, 703 *A.*2d 347 (citations omitted). We further recognized a class of objects "having a wide variety of lawful uses but of which may take on the character of a deadly weapon" depending on the circumstances. *Id.* at 147, 703 *A.*2d 347. We articulated the test in the following terms:

[T]he character of this class of objects as deadly weapons is, in every case, entirely circumstantial—that is, did a particular defendant possess a particular object at a particular time and in a particular situation with the intention of using it as a weapon.

[*Id.* at 147, 703 *A.*2d 347].

In applying the *Riley* analysis to the facts here, the sentencing judge's conclusion that defendant did not possess the automobile with the intent to use it as a weapon is clear. An automobile is not a firearm, nor is it an object for which there are no innocent uses. Simply put, an automobile is ordinarily expected to be used as a means of transportation.

On the other hand, an automobile can be used as a deadly weapon under certain circumstances; the most obvious example being where it is driven directly at a law enforcement officer who is positioned to stop the vehicle. Thus, there may be circumstances where an automobile can be used as a deadly weapon.

[321 *N.J.Super.* at 363–64, 729 *A.*2d 52.]

We add only these observations. Although the literal language of the statute may reach to a case like this (defendant had at the time of the offense used an object—the car—capable of being used as a deadly weapon), that was not the intent of NERA.[1] Penal statutes are strictly construed, *State v. Edwards,* 28 *N.J.* 292, 298, 146 *A.*2d 209 (1958), and this principle applies to the Act. *State v. Thomas,* 322 *N.J.Super.* 512, 518, 731 *A.*2d 532 (App.Div.1999) (holding that the No Early Release Act must be strictly construed). As originally introduced, NERA applied to any "crime of violence." The Governor's Study Commission on Parole recommended, and the Assembly by amendment agreed, that the term, crime of violence, "should be drawn *narrowly* to reflect the most dangerous criminal conduct." *Report of the Study Commission on Parole,* December 1996, p. 13 (emphasis added).

---

1 Literalism should sometimes yield in the interpretation of statutes.

The common sense of man approves the judgment mentioned by Puffendorf, that the Bolognian law which enacted "that whoever drew blood in the streets should be punished with the utmost severity," did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit. The same common sense accepts the ruling, cited by Plowden, that the statute of lst Edward II, which enacts that a prisoner who breaks prison shall be guilty of felony, does not extend to a prisoner who breaks out when the prison is on fire-"for he is not to be hanged because he would not stay to be burnt."

[*K Mart Corp. v. Cartier, Inc.,* 486 *U.S.* 281, 325 n. 2, 108 *S.Ct.* 1811, 1835 n. 2, 100 *L.Ed.*2d 313, 344–45 n. 2 (1988) (Scalia, J., concurring in part and dissenting in part)].

■ The recommended amendment of *N.J.S.A.* 2C:43–7.2d, that linked the definition of crimes of violence to crimes involving the use of a deadly weapon was intended to narrow, not broaden, the Act's coverage. To apply NERA when violence was neither intended nor threatened contradicts that purpose. The Legislature is presumed to be familiar with judicial construction of statutes. Whether an otherwise innocent object, such as an automobile or a kitchen knife, is regarded as a deadly weapon is resolved by a "contextual test." Cannel, *New Jersey Criminal Code Annotated,* comment 4 on *N.J.S.A.* 2C:39–5 (1999)(citing *Riley, supra,* at 148–49, 703 *A.2d* 347). "If it is used as a weapon, it is a weapon; if it is not used as a weapon, it is [not a weapon, it is] only a potential weapon whose potentiality remained unrealized." *Ibid.* (quoting *Riley, supra,* at 148, 703 *A.2d* 347).

These principles of contextual analysis are consistently applied in varied settings. In *State v. Colon,* 186 *N.J.Super.* 355, 452 *A.2d* 700 (App.Div.1982), the issue was whether a knife (an object having legitimate uses) was a weapon possessed under manifestly inappropriate circumstances in violation of *N.J.S.A.* 2C:39–5d. The court upheld the conviction because the switchblade knife allegedly possessed to peel potatoes was not so being used to settle an argument. "The issue is not whether a weapon could be lawfully used, but whether the circumstances surrounding the possession were manifestly appropriate for such lawful uses." *Colon, supra,* at 357, 452 *A.2d* 700; *see also State v. Lee,* 96 *N.J.* 156, 162, 475 *A.2d* 31 (1984) (explaining that "surrounding circumstances" determines whether the purpose of an actor is to use an otherwise innocent object "as a weapon"). The legislative concern to sanction reckless eluding that poses a risk of injury to others is respected inasmuch as it is precisely the reckless use of the car posing risk of injury to others that elevates what would be a third-degree offense of eluding to a second-degree offense carrying a presumption of imprisonment. *State v. Wallace,* 158 *N.J.* 552, 730 *A.2d* 839 (1999). Of course, if defendant had, in the course of eluding, caused death or serious bodily injury to another, the Act would apply. *See State v. Ferencsik,* 326 *N.J.Super.* 228, 231, 741

*A*.2d 101 (App.Div.1999) (holding NERA applies to reckless vehicular homicide when defendant caused death by driving recklessly); *State v. Newman*, 325 *N.J.Super.* 556, 561, 740 *A*.2d 153 (App.Div. 1999) (holding that reckless manslaughter was a "violent crime" under NERA).

■ For future guidance, we point out that even if the Act were applicable to Burford's crime, his plea would probably have been set aside for failure to comply with the requirements of *State v. Kovack*, 91 *N.J.* 476, 453 *A*.2d 521 (1982).[2] In *Kovack*, the Court held that "a defendant must be informed of any period of parole ineligibility that is likely to become part of his sentence," *id.* at 479, 453 *A*.2d 521, and that, at the time of the plea, "the court must make certain that defendant has been made aware of any loss of parole opportunities that may be a component of the sentence." *Id.* at 483, 453 *A*.2d 521. The court stated, "[o]bviously, this is best accomplished by the court satisfying itself, through specific question and answer, that defendant understands the possibility that a stated period of parole ineligibility can be made part of the sentence." *Id.* at 484, 453 *A*.2d 521 (footnote omitted). In the absence of such advice, no period of parole ineligibility can be imposed without giving the defendant the option of withdrawing his guilty plea subject to reinstatement of any dismissed charge, endeavoring to renegotiate the agreement, or accepting the sentence. *Id.* at 485, 453 *A*.2d 521.

In his April 24, 1998 Directive for Enforcing the No Early Release Act, former Attorney General Verniero reinforced these requirements of *Kovack* for procedural fairness and directed that written notice be furnished to the court and a defendant before a plea hearing (and after verdict) concerning whether the defendant may be subject to the provisions of NERA. The Directive also

---

[2] And, having commenced to serve a sentence that was not really illegal (the trial court simply found a sentencing predicate absent), it may not have been possible to increase defendant's sentence. *State v. Ryan*, 86 *N.J.* 1, 429 *A*.2d 332 (1981).

suggests the manner in which the grounds for NERA sentencing may be established. Moreover, if a defendant desires to plead guilty but contests the State's assertion that NERA applies, the defendant can enter the plea and acknowledge his or her potential exposure under NERA, and agree to be bound by the determination at the sentencing hearing, or the parties might agree that the defendant can withdraw his or her plea if the judge finds that the Act applies.

In future cases, courts must ensure that the *Kovack* requirements are met in accepting a NERA plea. In most instances, the predicate for NERA sentencing will be established by the elements of the offense to which the plea has been entered.

The judgment of the Appellate Division is affirmed.

LaVECCHIA, J., concurring, in part and dissenting, in part.

The Court today holds that the No Early Release Act ("NERA"), *N.J.S.A.* 2C:43–7.2, should not be applied to defendant. The Court cites two reasons. First, the manner in which the Court accepted defendant's plea did not satisfy *State v. Kovack*, 91 *N.J.* 476, 453 *A.2d* 521 (1982) and his sentence may not now be able to be increased. Second, defendant's driving of a stolen car to elude police did not constitute use of a "deadly weapon" triggering application of NERA.

I agree with the first reason and therefore join in the disposition of the Court. I disagree as to the second reason.

In enacting NERA, the Legislature sought to require longer sentences for criminals whose actions caused death or serious bodily injury or who used in the commission of their crime a deadly weapon capable of causing death or serious bodily injury. Either circumstance qualifies for NERA to be applicable. NERA defines "violent crime" as "... any crime in which the actor causes death, causes serious bodily injury ... or *uses or threatens the immediate use of a deadly weapon*" (emphasis added). *Id.* subsection d. The term "deadly weapon" is defined as "... any

firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, *which in the manner it is used* or is intended to be used, *is known to be capable of producing death or serious bodily injury.*" *Ibid.* (emphasis added).

Here defendant was driving a stolen car when police attempted to stop him. The sentencing hearing reveals that defendant drove the stolen car indiscriminately through Newark, in excess of the lawful speed limit, to elude the police. He recklessly sped through the streets and intersections of heavily populated areas of Newark, running stop signs, running a red light and colliding with another car in an intersection. Fortunately, the operator of the second vehicle escaped serious injury.

The majority concedes that reckless behavior is sufficient to support the imposition of NERA's extended period of parole ineligibility if the conduct of the criminal defendant actually causes death or serious bodily injury, citing *State v. Newman,* 325 *N.J.Super.* 556, 740 *A.*2d 153 (App.Div.1999), *certif. den.* 163 *N.J.* 396, 749 *A.*2d 370 (2000) and *State v. Ferencsik,* 326 *N.J.Super.* 228, 741 *A.*2d 101 (App.Div.1999), but not if injury is fortuitously avoided. I disagree. I read the statute as requiring NERA to apply if defendant "uses" a "deadly weapon" even if death or serious bodily injury does not result.

It is clear to me that the automobile used by defendant here, in the manner in which it was used, constituted a "deadly weapon" within the meaning of NERA. NERA's definition of "deadly weapon" specifically includes an instrument which, in the manner it is used, is known to be capable of producing death or serious bodily injury. A speeding car, driven recklessly in heavily populated areas of an urban center in New Jersey, by someone ignoring traffic controls such as stop signs and a red traffic light, is an object capable of producing death or serious bodily injury. And, the defendant actually did hit another car, with a person in it. His conduct easily meets the "contextual" analysis urged by the majority. He did everything within his ability to seriously

hurt someone. By good fortune, this defendant was not successful in causing death or serious bodily injury. But, the manner in which he used that stolen car made it capable of producing such consequences, and but for good fortune would have been successful in producing serious harm. For that, a defendant in circumstances such as presented here should be subject to NERA. *State v. Colon*, 186 *N.J.Super.* 355, 452 *A.2d* 700 (App.Div.1982) is wholly inapposite. This was not a man whose purpose was about "peeling potatoes."

In a related context the Legislature has recognized the heightened criminality of using a stolen car to elude police while placing others at risk of death or injury. In 1993, the Legislature elevated the offense of eluding, if it created a risk of injury or death, to a second degree crime. *N.J.S.A.* 2C:29–2b. The Legislature added a presumption in favor of jail time for all second degree eluding offenses, even if a first time offender was involved. Upon signing the bill enacting chapter 219 of the Laws of 1993, Governor Florio noted:

> This bill puts the brakes on a frightening and dangerous act. Suspects who lead police on high speed chases put everyone around them at risk of injury or death. Now, they'll face mandatory sentences for turning a motor vehicle into a deadly weapon.

I would find that the manner in which defendant used a stolen vehicle to elude police through the streets of Newark constituted use of a "deadly weapon" within the meaning of NERA and therefore would hold NERA to be applicable.

The Chief Justice joins in this opinion.

*For affirmance*—Justices O'HERN, STEIN, COLEMAN and LONG—4.

*Concur in part; dissent in part*—Chief Justice PORITZ and Justice LaVECCHIA—2.