769 A.2d 1091

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
KATHLEEN CULLUM, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 14, 2001—Decided March 29, 2001.

Before Judges BAIME, CARCHMAN and LINTNER.

*Peter A. Garcia*, Acting Public Defender, attorney for appellant (*Donald T. Thelander*, Assistant Deputy Public Defender, of counsel and on the brief).

*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney for respondent (*Deborah Bartolomey*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

LINTNER, J.A.D.

This appeal requires us to determine, for the first time in a reported opinion, whether a defendant who is convicted of drug-induced death, *N.J.S.A.* 2C:35–9, is subject to the eighty-five percent period of parole ineligibility provisions of the No Early Release Act, *N.J.S.A.* 2C:43–7.2 (NERA). We hold that a drug-induced death qualifies as a violent crime under the provisions of NERA and therefore the eighty-five percent parole disqualifier was properly applied.

On May 19, 1998, defendant was charged under Ocean County Indictment No. I–98–05–00644 with forgery, *N.J.S.A.* 2C:21–1a(3) (Counts One, Two and Four); theft by deception, *N.J.S.A.* 2C:20–4 (Counts Three and Five); drug-induced death, *N.J.S.A.* 2C:35–9

(Count Six); and distribution of heroin, *N.J.S.A.* 2C:35–5a(1) and 5b(3) (Count Seven). On February 26, 1999, defendant entered a plea of guilty to drug-induced death and one count of forgery in accordance with the terms of a negotiated plea agreement. According to the plea agreement, the State agreed to: (1) dismiss the remaining counts in the Indictment; (2) recommend concurrent sentences; and (3) request that defendant be sentenced as a second degree offender for the first-degree offense of drug-induced death. At the time of the plea, the State advised defendant that it would move to have defendant sentenced under NERA, which was understood and acknowledged by defendant in response to questions asked by the judge. Defendant agreed to pay full restitution on all applicable counts of the indictment, including those that were to be dismissed. Defendant's guilty plea was entered without conditions. On May 14, 1999, defendant was sentenced to a term of five years imprisonment with four years and three months of parole ineligibility, pursuant to the eighty-five percent provision of NERA.

We need not recite the facts in detail. The decedent, a close friend of defendant, gave defendant twenty dollars to purchase two bags of heroin. After purchasing the heroin, defendant brought it to the decedent who injected one bag into her own arm. Defendant did the same. The next morning, after awaking, defendant found her friend dead. Thereafter, defendant stole checks from decedent's checking account, forged decedent's name and cashed them. The autopsy revealed a puncture wound in decedent's left forearm and listed the cause of death as an adverse drug reaction. Her blood contained .093% ethanol, .05 mg. of diphenhydramine and .37 mg. of morphine.

Defendant concedes that under the strict liability provisions of *N.J.S.A.* 2C:35–9 she caused decedent's death. However, she argues that the imposition of the eighty-five percent period of parole ineligibility must be vacated because, under the circumstances of this case, she did not "cause" decedent's death under NERA. The pertinent portions of NERA provide:

a. A court imposing a sentence of incarceration for a crime of the first or second degree shall fix a minimum term of 85 percent of the sentence during which the defendant shall not be eligible for parole if the crime is a violent crime as defined in subsection d. of this section.

. . .

c. Notwithstanding any other provision of law to the contrary and in addition to any other sentence imposed, a court imposing a minimum period of parole ineligibility of 85 percent of the sentence pursuant to this section shall also ... impose ... a three-year term of parole supervision if the defendant is being sentenced for a crime of the second degree. . . .

d. For the purposes of this section, "violent crime" means any crime in which the actor causes death. . . .

Defendant challenges the applicability of NERA to the circumstances here because it defines, in part, "violent crime" as one "in which the actor causes death." She argues that her conduct only involved the distribution of drugs, which the decedent voluntarily took, causing her own death. Defendant thus concludes that she did not herself cause decedent's death as required by NERA. We disagree.

In upholding the constitutionality of the strict liability provisions of the drug-induced death statute, our Supreme Court observed that the risk of death associated with the distribution of heroin and cocaine is "clearly present." *State v. Maldonado*, 137 *N.J.* 536, 551, 645 *A*.2d 1165 (1994). While defendant may not have intended decedent's death, there is no escaping the fact that drug induced deaths are an irrefutable and universally known consequence of the distribution of heroin and similar types of controlled dangerous substances. *Id.* at 551–52, 645 *A*.2d 1165. The likelihood that the distribution of drugs will result in the ultimate death of the consumer is no less remote than the eventuality of death or serious injury resulting from one who operates a motor vehicle while intoxicated. Neither may have intended to cause harm but the prospects for it are equally apparent.

The distribution of heroin, which is then voluntarily injected by the recipient, who later dies as a result, may not involve the actual application of physical force that occurs when an intoxicated driver strikes someone, causing death. Nevertheless, it is no less apparent that the offensive conduct by the actor is the cause of the

victim's death. Thus, we have held NERA applicable to vehicular homicide caused by a defendant who was found guilty of driving while intoxicated for the third time, notwithstanding the lack of a culpable mental state. *State v. Ferencsik*, 326 *N.J.Super.* 228, 741 *A.*2d 101 (1999). Likewise, in *State v. Newman*, 325 *N.J.Super.* 556, 740 *A.*2d 153 (App.Div.1999), *certif. denied*, 163 *N.J.* 396, 749 *A.*2d 370 (2000), we found that NERA was properly applied where the owner of a home fell down the steps as a result of being startled by the defendant who entered the house, with the intent to steal, believing the owner not to be home. We observed that "[NERA] does not prescribe elements of an offense. It imposes its enhanced parole ineligibility after determination of guilt and proof of the elements of the underlying crime." *Id.* at 560, 740 *A.*2d 153. We concluded that a fair reading of NERA does not require culpability as a qualifier for applicability. *Id.* at 560, 740 *A.*2d 153.

*N.J.S.A.* 2C:35–9a and b provide in pertinent part:

a. Any person who ... distributes ... [heroin] ... is strictly liable for a death which results from the injection ... of that substance, and is guilty of a crime of the first decree.

b. The provisions of *N.J.S.* 2C:2–3 (governing the causal relationship between conduct and result) shall not apply in a prosecution under this section. For purposes of this offense, the defendant's act of ... distributing ... a substance is the cause of a death when:

(1) The injection ... of the substance is an antecedent but for which the death would not have occurred; and

(2) The death was not;

(a) too remote in its occurrence as to have a just bearing on the defendant's liability; or

(b) too dependent upon conduct of another person which was unrelated to the injection ... of the substance or its effect as to have a just bearing on the defendant's liability.

c. It shall not be a defense to a prosecution under this section that the decedent contributed to his own death by his purposeful, knowing, reckless or negligent injection ... of the substance....

Defendant contends that the Legislature did not intend NERA to apply to strict liability crimes. Instead, she maintains, it applies only to crimes resulting in death or serious bodily injury arising out of the application of *N.J.S.A.* 2C:2–3 which defines causal

relationship in terms of antecedent result and satisfaction of additional causal requirements imposed by the particular offense including: (1) purposefully or knowingly and (2) reckless or criminally negligent conduct. We reject defendant's contention.

NERA is intended to be strictly construed. *State v. Thomas*, 322 *N.J.Super.* 512, 518, 731 *A.*2d 532 (App.Div.1999), *aff'd*, —— *N.J.* —— (2001). However, even though strictly construed, the words of a statute, absent special meaning, are to be given their ordinary and well understood meaning. *Fahey v. Jersey City*, 52 *N.J.* 103, 107, 244 *A.*2d 97 (1968). The provisions of NERA do not restrict it to offenses that require some form of culpability whether based upon intentional, reckless or negligent conduct. The language of the statute is not ambiguous, instead it conveys the clear legislative intent. A "violent crime" is specifically described as "*any crime* in which the actor causes death." *N.J.S.A.* 2C:43–7.2. (Emphasis added.) *State v. Burford*, 163 *N.J.* 16, 746 *A.*2d 998 (2000), held that NERA did not apply to a defendant who used a stolen automobile to elude police and recklessly struck another vehicle during the ensuing chase because the automobile, from a contextual sense, was not used as a deadly weapon. However, in reaching its decision, the Court observed "if defendant had, in the course of eluding, caused death ... to another, [NERA] would apply." *Id.* at 20, 746 *A.*2d 998. Thus, NERA applies where death results from a criminal act regardless of whether the consequences were intended or contemplated.

In December 1966, "The Governor's Study Commission on Paroles recommended, and the Assembly by amendment agreed, that the term, crime of violence, 'should be drawn *narrowly* to reflect the most dangerous criminal conduct.'" *Id.* at 19, 746 *A.*2d 998. At the time the drug-induced death statute was passed in 1987, the Attorney General reported that "[a]pproximately fifty percent of all crimes prosecuted in New Jersey are drug related. At least one-third of all crimes in this State, including violent crime and thefts, are committed by persons who are under the

influence of alcohol or illicit substances." *State v. Maldonado,* *supra,* 137 *N.J.* at 552, 645 *A.*2d 1165 (quoting W. Cary Edwards, *An Overview of the Comprehensive Drug Reform Act of 1987,* 13 *Seton Hall Legis. J.* 5, 9 (1989)). It strains the bounds of credulity to suggest that the Legislature intended the distribution of drugs resulting in either death or serious bodily injury to be considered an offense which does not qualify as "most dangerous criminal conduct" simply because the consequences were not intended. We are satisfied that NERA, which defines violent crime as "any crime in which the actor causes death," applies to the strict liability offense of drug-induced death, *N.J.S.A.* 2C:35–9.

Affirmed.