817 A.2d 371 (2003)
358 N.J. Super. 162
STATE of New Jersey, Plaintiff-Respondent,
v.
Robin M. FREUDENBERGER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 2003.
Decided March 10, 2003.
*372 Daniel V. Gautieri, Assistant Deputy Public Defender, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Ms. Gautieri, of counsel and on the brief).
Jeanne Screen, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Acting Attorney General, attorney; Ms. Screen, of counsel and on the brief).
Before Judges KING, LISA and FUENTES.
The opinion of the court was delivered by LISA, J.A.D.
A guilty plea to an offense subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, may be withdrawn if the defendant was not first informed of the mandatory 85% parole disqualifier required for NERA offenses. State v. Burford, 163 N.J. 16, 21-22, 746 A.2d 998 (2000). In this appeal, we consider whether the failure of a defendant to also be informed, before pleading guilty to a NERA offense, of the special parole supervision provision mandated by NERA can constitute a basis for withdrawal of the plea. We hold it can.
After pleading guilty to aggravated manslaughter, N.J.S.A. 2C:11-4a, defendant was sentenced to the twenty-five-year term of imprisonment recommended in her plea agreement, subject to an 85% NERA parole disqualifier. Defendant appealed, and because the only issues raised pertained to her sentence, the matter was placed on our excessive sentencing calendar. R. 2:9-11. After oral argument, the *373 excessive sentencing panel affirmed the sentence.[1] The Supreme Court then granted defendant's petition for certification, and summarily remanded the matter to us for full briefing and argument of the appeal on the merits. State v. Freudenberger, 174 N.J. 37, 803 A.2d 633 (2002). Both parties have submitted briefs and we have heard oral argument. Defendant contends:
POINT I
THE MATTER MUST BE REMANDED BECAUSE DEFENDANT WAS INADEQUATELY ADVISED ABOUT THE PENAL CONSEQUENCES OF THE PLEA, AS SHE WAS NEVER INFORMED OF THE UNIQUE TERMS OF PAROLE UNDER THE NO EARLY RELEASE ACT.
POINT II
THE COURT ERRED IN IMPOSING A 25-YEAR SENTENCE, BECAUSE IT WEIGHED INAPPLICABLE AGGRAVATING FACTORS AND FAILED TO WEIGH APPLICABLE MITIGATING FACTORS.
On Point I, we remand with directions that defendant move before the trial court to vacate her plea. Because of this disposition, we do not address Point II.
Defendant was indicted for first-degree murder, N.J.S.A. 2C:11-3a(1) and (2), first-degree felony murder, N.J.S.A. 2C:11-3a(3), second-degree conspiracy to commit robbery and theft, N.J.S.A. 2C:5-2, N.J.S.A. 2C:15-1a and N.J.S.A. 2C:20-3a, two counts of first-degree robbery, N.J.S.A. 2C:15-1a(1), and third-degree distribution of a controlled dangerous substance, N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(3). Two co-defendants, Delton K. Anderson and Kathleen Dunleavy, were charged with the same offenses.
Defendant and the Burlington County Prosecutor entered into a plea agreement providing for amendment of the murder count to charge first-degree aggravated manslaughter. N.J.S.A. 2C:11-4a. In exchange for defendant's plea to the downgraded charge, the State recommended a sentence of twenty-five years imprisonment, subject to an 85% period of parole ineligibility as required by NERA. In the plea colloquy, defendant was clearly informed of the 85% parole disqualifier and acknowledged her understanding of it. She does not now contend otherwise. The agreement also obligated defendant to cooperate and testify truthfully if called by the State as a witness against her co-defendant(s).
Defendant signed the supplemental plea form for NERA cases. The form contains four questions. The first asks whether defendant understands she is pleading guilty to a NERA offense; the second asks whether defendant understands she must serve 85% of the sentence before being eligible for parole.[2] These two questions were followed by circling the choice "Yes." The third question asks whether defendant understands that the court must impose a term of parole supervision of five years for a first-degree crime[3] beginning upon completion *374 of the sentence of incarceration. The fourth question is:
4. Do you understand that if you violate the conditions of your parole supervision that your parole may be revoked and you may be subject to return to prison to serve all or any portion of the remaining period of parole supervision, even if you have completed serving the term of imprisonment previously imposed?
Following these two questions neither the "Yes" nor "No" response was circled. There was no mention of the subject during the plea colloquy.
Defendant entered her guilty plea on December 18, 2000. Her sentencing was held in abeyance until May 4, 2001 because of her agreement to testify against her co-defendant, Anderson, who was tried in March 2001. At her sentencing, the prosecutor acknowledged that defendant testified fully and truthfully as agreed. The judge imposed the recommended twenty-five year sentence. As provided in the plea agreement, the judge dismissed all other counts as to defendant. When pronouncing sentence, the judge did not order as part of the sentence the special five-year NERA parole supervision mandated by N.J.S.A. 2C:43-7.2c. The subject was not mentioned during this court proceeding. The parole supervision provision is also missing in defendant's judgment of conviction.
The five-year parole supervision provision is not self-executing. It requires the sentencing court to "impose" it. Ibid.; see State v. Cheung, 328 N.J.Super. 368, 371, 746 A.2d 38 (App.Div.2000). For purposes of our analysis, because the provision is mandatory, we deem it as though it had been imposed by the trial court.
Defendant did not move before the trial court to withdraw her plea. R. 3:21-1. We therefore have no record upon which to review whether, when she pled guilty, defendant did indeed know about and understand the mandatory NERA parole supervision period. She merely argues that because the judge did not inform her of it at the plea hearing and because the applicable portion of the plea form was not completed, she should be entitled to withdraw her plea.
Before accepting a guilty plea, a trial judge must ensure that the defendant enters the plea voluntarily and with a correct understanding of its penal consequences. State v. Howard, 110 N.J. 113, 122, 539 A.2d 1203 (1988); State v. Taylor, 80 N.J. 353, 362, 403 A.2d 889 (1979). Rule 3:9-2 provides that a court may refuse to accept a guilty plea and shall not accept it without first addressing the defendant personally, and determining, among other things, that the plea is made voluntarily "and with an understanding of the nature of the charge and the consequences of the plea." (Emphasis added.) "The right of the defendant to be informed of the consequences of [her] plea, however, extends only to those consequences that are `direct,' or `penal,' but not to those that are `collateral.'" State v. Howard, supra, 110 N.J. at 122, 539 A.2d 1203 (citing State v. Heitzman, 209 N.J.Super. 617, 622, 508 A.2d 1161 (App.Div.1986), aff'd o.b., 107 N.J. 603, 527 A.2d 439 (1987)).
Parole ineligibility is a penal consequence. State v. Burford, supra, 163 N.J. at 21-22, 746 A.2d 998; State v. Howard, supra, 110 N.J. 113, 539 A.2d 1203; State v. Kovack, 91 N.J. 476, 453 A.2d 521 (1982). A defendant pleading guilty must be "made aware of any loss of parole opportunities that may be a component of the sentence." State v. Kovack, supra, 91 N.J. at 483, 453 A.2d 521. "Except for capital punishment, no other consequence [of a guilty plea] can be as significant to an *375 accused as the period of possible confinement. When one enters a plea of guilty, [one] should be told what is the worst to expect." Ibid. (quoting Berry v. United States, 412 F.2d 189, 192 (3d Cir.1969)).
These principles are particularly significant when an offense carries with it special provisions pertaining to parole eligibility. With certain sex offenses, for example, defendants found to be repetitive and compulsive in their sexual behavior who are sentenced to the Adult Diagnostic and Treatment Center at Avenel are "subject to a period of parole eligibility radically different from that accorded State Prison inmates." State v. Howard, supra, 110 N.J. at 125, 539 A.2d 1203. This possibility must be explained to the defendant before accepting a guilty plea to render that plea knowing and voluntary. Ibid.
NERA's parole supervision provision is unique and radically different from non-NERA offenses. For non-NERA offenses, when an inmate is released on parole, the length of parole supervision extends to the point at which the sentence would expire. If because of accumulation of credits the inmate "maxes out" before the conclusion of the specified sentence, the inmate is released before the expiration of the sentence without parole supervision. Of course, if the inmate serves the full sentence, release is without parole supervision. With a NERA sentence, however, regardless of when the inmate is released, he or she is subject to a fixed five-year term of parole supervision for first-degree crimes and three years for second-degree crimes.
Most NERA inmates will accumulate sufficient credits to "max out" and be released immediately upon completion of their 85% parole bar. In defendant's case, this would occur after serving approximately twenty-one years, three months. Whether she serves this amount of time in custody or a longer time, up to twenty-five years, her five-year period of parole supervision will extend beyond her twenty-five-year sentence.
The legislation that adopted NERA included an amendment to the Parole Act, which provides that a NERA inmate, upon release, "shall, during the term of parole supervision, remain on release status in the community, in the legal custody of the Commissioner of the Department of Corrections, and shall be supervised by ... the State Parole Board [[4]]...." N.J.S.A. 30:4-123.51b(a) (L. 1997, c. 117, § 3). The Board is given the authority "to revoke the person's release status and return the person to custody for the remainder of the term...." Ibid.
Being under parole supervision beyond the term of the imposed sentence is itself a significant penal consequence. More significant is the possibility that upon a parole violation a defendant could be required to serve additional time after expiration of the specified sentence. Even more significant is the possibility that upon a parole violation a defendant could be re-incarcerated and serve more than twenty-five years in prison on a "25 year sentence." We do not determine that this result would follow. The issue has not been judicially determined, and it is not before us in this case. However, it is a result that is clearly possible. Thus, the language in question 4 of the supplemental plea form states that "you may be subject to return to prison to serve all or any portion of the remaining period of parole supervision, even if you have completed *376 serving the term of imprisonment previously imposed." (Emphasis added.)
A defendant pleading guilty to a NERA offense must be informed of these potential consequences"the worst to expect"to render the plea knowing and voluntary. On remand, defendant shall move before the trial court pursuant to Rule 3:21-1 to withdraw her guilty plea. If it is determined that defendant knew before her plea of the NERA parole supervision provision, understood it, and pled guilty, the failure of the trial judge to inform her of it would not be prejudicial to defendant and would not justify withdrawal of her plea. State v. Taylor, supra, 80 N.J. at 363-64, 403 A.2d 889. If, however, it is determined she did not know about it or understand it, she should be entitled to withdraw her plea.
If the plea is withdrawn, the appropriate remedy is to afford defendant the option of then (1) renegotiating the plea agreement with the prosecutor, if the prosecutor is willing; (2) going to trial, subject, of course, to reinstatement of all dismissed or downgraded charges, as they appeared in the original indictment; or (3) accepting reimposition of the twenty-five-year sentence, subject to the 85% parole disqualifier and five-year parole supervision term as required by NERA. See State v. Burford, supra, 163 N.J. at 21, 746 A.2d 998; State v. Howard, supra, 110 N.J. at 125-26, 539 A.2d 1203 (citing State v. Kovack, supra, 91 N.J. at 485, 453 A.2d 521).
We do not address defendant's argument regarding the aggravating and mitigating factors and the propriety of the twenty-five-year term. To do so would be premature. After conclusion of the remand proceedings, defendant may file a new appeal if she feels aggrieved by the resulting sentence.
Remanded. We do not retain jurisdiction.
NOTES
[1] The matter was remanded for the limited purpose of reconsideration of the amount of the VCCB penalty, an issue not involved in this appeal.
[2] This is actually 2a. There is also a 2b, in which the number of years and months of the 85% parole disqualifier are to be filled in. This was not filled in and neither the "Yes" nor "No" response was circled. However, defendant does not dispute her understanding of the 85% parole disqualifier and makes no argument regarding the incompletion of this portion of the form.
[3] The NERA parole supervision period for second-degree crimes is three years. N.J.S.A. 2C:43-7.2c.
[4] The original enactment allocated this responsibility to the Bureau of Parole of the Department of Corrections. It was amended to transfer the responsibility to the State Parole Board by L. 2001, c. 79, § 6.