766 A.2d 782

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. J.A., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 17, 2000—Decided February 5, 2001.

Before Judges A.A. RODRÍGUEZ, COLLESTER and FALL.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Edward C. Lehman*, Designated Counsel, of counsel and on the brief).

*John J. Farmer, Jr.*, Attorney General, attorney for respondent (*Kristen A. McKearney*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court has been filed by

RODRÍGUEZ, A. A., J.A.D.

In this appeal, we hold that penile penetration of the space between the labia majora or outer lips of the vulva constitutes "vaginal intercourse" within the meaning of *N.J.S.A.* 2C:14–2a(1).

Following a jury trial, defendant, J.A., was convicted of first degree aggravated sexual assault on his daughter, who was then less than thirteen years old, *N.J.S.A.* 2C:14–2a(1); second degree endangering the welfare of a child, *N.J.S.A.* 2C:24–4a; and fourth degree child abuse, *N.J.S.A.* 9:6–1. A report on examination at the Adult Diagnostic and Treatment Center, pursuant to *N.J.S.A.* 2C:47–2, indicated that defendant's conduct was not characterized by a pattern of repetitive, compulsive behavior. The judge merged all convictions and imposed an eighteen-year State Prison

term with an eight-year period of parole ineligibility. We affirm the convictions and sentence.

I

The victim, "Nancy," is defendant's daughter.[1] She was born on June 20, 1987. When Nancy was five years old, defendant's wife moved to Massachusetts, leaving him to care for Nancy and her three-year old brother.

According to the State's proofs, on numerous occasions while Nancy was in the first and second grade, defendant molested her in their basement apartment. When the children would return from school, defendant would have his son take a nap in a separate room. He would place Nancy on some blankets that served as a bed and would pull down her pants. He would pull down his own pants and lay on top of her. Defendant would place his penis on top of Nancy's private parts and move from side to side. Although Nancy testified that defendant's penis was not between her legs and he never hurt her, the State's medical expert opined that at least the tip of the penis was placed just inside Nancy's labia majora.

Defendant threatened Nancy by telling her that he would throw her into the Hudson River if she ever told anybody about what he had done to her. Defendant showed her the spot where he would throw her in the river. Defendant also told Nancy that if anyone ever discovered that she had been sexually assaulted, she should say that one of his friends was responsible. Nancy, who was only six or seven at the time, believed her father's threats and never told anyone.

Sometime in August 1994, defendant brought Nancy and her brother to visit Cora, a family friend.[2] Defendant would bring his children for regular weekend visits to Cora's apartment in New

---

[1] "Nancy" is a fictitious name. She is identified in the record as "N.A."

[2] "Cora" is a fictitious name. She is identified in the record as "C.B."

York. In February 1995, defendant told Cora that he was experiencing financial difficulties and could no longer take care of the children. Although Cora was initially reluctant, she eventually allowed defendant, Nancy and her brother to move in with her. Soon thereafter, Cora filed a petition in New York's Family Court seeking custody of Nancy and her brother. Defendant consented. The Family Court awarded custody of the children to Cora. However, some months later, defendant changed his mind and sought to have custody returned to him. He was unsuccessful. Cora threw him out of her apartment.

At some point thereafter, Cora attempted to have custody of the children returned to defendant. However, the Family Court judge ordered Cora to maintain custody. That same month, defendant left with the children. He took them to live in a shelter. Upon discovering this, Cora removed the children from the shelter with police assistance and brought them back to live with her. Contemporaneously, Cora's uncle moved into her apartment. He lived with her and Nancy for a period of time.

When Nancy was eight years old, a routine physical examination revealed that she tested positive for chlamydia, a sexually transmitted infection. While Nancy was at Union Hospital for treatment of this infection, two social workers from the Administration for Children's Services investigated Cora and her home. During that investigation, Nancy revealed that she had been sexually molested. Initially, Nancy blamed the assault on one of her father's friends. Later, she admitted that her father had molested her repeatedly while they lived on Summit Avenue in Jersey City.

Two months later, Nancy came under the medical care of Linda Cahill, M.D. at Montefiore Medical Center. Thereafter, Cora brought Nancy to the Hudson County Prosecutor's Office to press a complaint against defendant. Investigator Richard Fiocco tape-recorded sworn statements from Nancy and Cora. Nancy told Fiocco that her father had sexually molested her while they lived in Jersey City. She was able to direct Fiocco to the location of the house where the molestations occurred, as well as identify the

school she had attended at the time. Defendant was arrested and tried.

At trial, Lynn Taska, Ph. D., qualified as an expert in child sexual abuse accommodation syndrome. Dr. Taska is a clinical psychologist and a member of the faculty of the University of Medicine and Dentistry of New Jersey. She explained that the syndrome is marked by elements of secrecy, helplessness, entrapment and accommodation, delayed and unconvincing disclosure, and retraction and recantation. Dr. Taska described the syndrome. She offered no opinion as to whether Nancy had been sexually abused.

Dr. Cahill, who is an associate professor of clinical pediatrics at Albert Einstein College of Medicine, testified for the State as an expert in the treatment of sexually transmitted diseases in children. She also testified as a fact witness. According to her, Nancy's hymen appeared red but had no scars. She opined that in order to transmit chlamydia, it is sufficient if an infected penis touches the "inside of labial lips ... in the region of the vulva." In short, "penetration through the vaginal opening into the vagina" is not required. "It just requires touching of the penis against the vaginal opening against the hymen."

At trial, Nancy testified to several incidents of molestation by her father at their former apartment in Jersey City. She testified that defendant "put his private part on top of [her] private part, and moved from side to side." When asked, Nancy stated that this activity "didn't hurt."

Defendant testified and denied that he had ever molested Nancy or threatened to throw her in the river. He denied ever having chlamydia or any other sexually transmitted disease. He asserted that in October 1996, he was tested for chlamydia. The test was negative. However, he could not produce any documentation to corroborate this. Defendant alleged that Cora had convinced Nancy to falsely accuse him of the molestation in order to gain a tactical advantage in the ongoing custody battle over Nancy and her brother.

## II

On appeal, defendant first contends that the trial judge should have dismissed the aggravated sexual assault count because the State failed to prove sexual penetration, an essential element of the crime. He also contends that the judge gave an erroneously expanded definition of the term "penetration."

Sexual penetration, an element of aggravated sexual assault, is defined by the Criminal Code as:

> vaginal intercourse, cunnilingus, fellatio or anal intercourse between persons or insertion of the hand, finger or object into the anus or vagina either by the actor or upon the actor's instruction. The depth of insertion shall not be relevant as to the question of commission of the crime.
>
> [*N.J.S.A.* 2C:14-1c.]

There is no definition of the term "vaginal intercourse." Defendant argues that the Legislature intended the term vaginal intercourse to mean penile penetration of some portion of the vagina canal beyond the hymen. Defendant contends that because there is no evidence of such penetration, the State has failed to establish a *prima facie* case of aggravated sexual assault pursuant to *N.J.S.A.* 2C:14–2a(1).

The judge defined "sexual penetration" as follows:

> 'Sexual penetration' means vaginal intercourse, cunnilingus, fellatio or anal intercourse between persons or insertion of the hand, finger or object into the anus or vagina by the defendant. Any amount of insertion, however slight, constitutes penetration. The depth of the insertion is not relevant. This means that if you find from all of the evidence presented beyond a reasonable doubt *that there was penile penetration to the outer area of the vaginal opening, what is commonly referred to as the vaginal lips,* that is sufficient to establish penetration under the law. (emphasis added).

Defendant contends that this instruction is incorrect. We disagree.

When construing a statute, a court should always effectuate the Legislature's intent. We are mindful that although penal statutes are generally strictly construed in favor of a defendant, the rule of strict construction does not mean that manifestations of the Legislature's intent should be disregarded. *State v. Ferenc-*

*sik,* 326 *N.J.Super.* 228, 231, 741 *A.*2d 101 (App.Div.1999) (citing *State v. Edwards,* 28 *N.J.* 292, 298, 146 *A.*2d 209 (1958)).

The source of *N.J.S.A.* 2C:14–1 and –2 is the Model Penal Code. The Sponsor's statement to the 1978 adoption of the New Jersey Code of Criminal Justice states:

> This code is based upon the final report of the New Jersey Criminal Law Revision Commission of October 1971 and is the result of a year's review by the Assembly Judiciary, Law, Public Safety and Defense Committee of a draft which was prepared pursuant to Assembly Resolution No. 13 of 1972 and which was approved by the commission.

The Final Report of the New Jersey Criminal Law Revision Commission (Commission)[3] addresses the concept of "penetration" within the context of what was then called aggravated rape. This Report cites the Commentary to the 1953 Model Penal Code draft, which is instructive. The Commentary states:

> The chief issue which has arisen in defining the behavior to be treated as rape is whether to require proof of something more than 'slight penetration' *of the outer female genitalia.* It is settled law that the crime can be completed without orgasm or complete penetration of the male organ into the vagina. Predominantly the present statutes call for 'actual penetration' or 'any penetration however slight.' Under either formula it is held that the slightest penetration of the *outer part of the female genitalia* is sufficient; *it need not be shown that the male organ reached the vagina.*
>
> The reasoning behind this is said to be that the essence of the offense is the outrage to the person and feelings of the female, ... [Model Penal Code § 207.4 cmts. (Tentative Draft No. 4, 1953) (emphasis added) ]

The Commentary also addresses the evidentiary difficulties inherent in requiring "proof of penetration beyond the hymen... [because] some membranes are sufficiently elastic or have natural openings large enough to permit penetration without rupture."

Based on this Commentary, which sheds light on the legislative view of the essence of the offense, we conclude that the Legislature intended the term "vaginal intercourse" to be broader than intercourse in the vagina canal beyond the hymen. We conclude that penile penetration of the space between the labia majora or

---

[3] Final Report of the New Jersey Criminal Law Revision Commission, comment 5, *N.J.S.A.* 2C:14–1 (1971)

outer lips comes within the concept of vaginal intercourse to which *N.J.S.A.* 2C:14–1c refers. *See also State v. Fraction,* 206 *N.J.Super.* 532, 536, 503 *A.*2d 336 (App.Div.1985), *certif. denied,* 104 *N.J.* 434, 517 *A.*2d 426 (1986) (holding that cunnilingus, by licking the labia, constitutes an act of sexual penetration, although the actor's tongue is not inserted into the vagina); *State in the Interest of S.M.,* 284 *N.J.Super.* 611, 617, 666 *A.*2d 177 (App.Div.1995) (holding that fellatio constitutes an act of sexual penetration notwithstanding the fact that the victim's penis does not enter the actor's mouth because touching of the mouth and penis is sufficient to prove a violation). *But see State v. Gallagher,* 286 *N.J.Super.* 1, 15, 668 *A.*2d 55 (App.Div.1995), *certif. denied,* 146 *N.J.* 569, 683 *A.*2d 1164 (1996) (holding that insertion of the penis between the buttocks is not anal intercourse).

Therefore, the instruction that penile penetration of the outer area of the vaginal opening constitutes sexual penetration, was an accurate construction of *N.J.S.A.* 2C:14–1a. Here, there was circumstantial evidence that defendant's penis penetrated at least Nancy's labia. Therefore, a *prima facie* case of sexual penetration was presented by the State. The judge properly denied the motion to dismiss this charge.

[Section III, IV, V and VI of this opinion, involving unrelated issues, have been redacted for publication purposes].

Affirmed.