864 A.2d 400

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. KAA'WONE JOHNSON, DEFENDANT–APPELLANT.

Argued November 8, 2004—Decided January 26, 2005.

*Stephen W. Kirsch,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Gary A. Thomas,* Special Deputy Attorney General, argued the cause for respondent (*Paula T. Dow,* Assistant Attorney General, Acting Essex County Prosecutor, attorney).

Justice LaVECCHIA delivered the opinion of the Court.

After entering into a plea agreement and after having been sentenced in accordance with the provisions of the No Early Release Act, *N.J.S.A.* 2C:43–7.2 (NERA), defendant, Kaa'Wone Johnson, appealed his sentence. Defendant contends that his guilty plea must be set aside because he was not informed about NERA's period of extended parole supervision. The Appellate Division affirmed, by order, the sentence imposed. We granted certification, *State v. Johnson,* 180 *N.J.* 454, 852 *A.*2d 191 (2004), and now reverse and remand.

## I.

A brief summary of the facts will provide background for the question presented.

On the morning of October 21, 1997, defendant shot three people on a New Jersey Transit bus. Defendant entered the bus carrying a portable radio playing at high volume. While the bus was en route through Newark, an argument erupted when defendant was asked by a fellow passenger to turn down the volume. Defendant pulled out a nine-millimeter handgun and fired five to seven shots. Three individuals were hit. Two suffered minor injuries; the third victim was paralyzed as a result of having been shot in the chest. Defendant fled, but was located six days later and arrested.

In connection with the shooting, defendant was charged with one count of first-degree attempted murder, three counts of

second-degree assault, third-degree possession of a weapon, and second-degree possession of a weapon for an unlawful purpose. He entered into a plea agreement in which he pled guilty to three counts of second-degree aggravated assault and to one count of second-degree possession of a weapon for an unlawful purpose. The remaining charges were dismissed. The State recommended three consecutive five-year sentences on the assault charges, subject to NERA's eighty-five percent period of parole ineligibility. Also, on the possession charge, the State recommended one five-year term of imprisonment with a three-year period of parole ineligibility under the Graves Act, *N.J.S.A.* 2C:43–6c, to be served concurrently.

Defendant does not dispute on appeal that NERA applies, pursuant to *N.J.S.A.* 2C:43–7.2d(4), to each of the assault charges to which he pled, rendering him subject to a minimum period of parole ineligibility of eighty-five percent of the sentence and to a three-year term of parole supervision. *N.J.S.A.* 2C:43–7.2c. The crux of the issue is that defendant was not informed specifically about the three-year period of parole supervision when, at the time that he entered into the plea agreement, he was being advised about the eighty-five percent period of parole ineligibility. During the plea colloquy, neither the trial court nor the prosecutor mentioned the period of parole supervision. The plea form signed by defendant contained no information in respect of the period of parole supervision, although it did contain a question referencing NERA. Defendant was asked on the form whether he had entered a guilty plea for any charges that demanded a mandatory period of parole ineligibility and he circled "yes" next to that question. The form then explained that, in respect of the charges to which defendant was pleading guilty, the minimum mandatory period of parole ineligibility was three years and the maximum period of parole ineligibility was ten years. And, in the section of the form setting forth the sentence recommended by the prosecutor, handwritten into the form was "15 years subject to 85% rule; no

contact with victims." [1]

The court sentenced defendant to an aggregate prison term of fifteen years, subject to the eighty-five percent period of parole ineligibility on the assault charges. It further imposed a sentence of five years to be served concurrently, subject to a three-year period of parole ineligibility, on the possession charge. At defendant's sentencing hearing, the trial court did not include the three-year period of parole supervision under NERA when pronouncing defendant's sentence. However, the Judgment of Conviction and Order for Commitment indicates that for each of the three counts of aggravated assault, defendant would have to serve "3 years of parole supervision upon release."

We now consider whether defendant may seek to vacate his guilty plea.

## II.

A guilty plea may be accepted as part of a plea bargain when the court is assured that the defendant enters into the plea knowingly, intelligently and voluntarily. *R.* 3:9-2. For a plea to be knowing, intelligent and voluntary, the defendant must understand the nature of the charge and the consequences of the plea. *Ibid.*

Although a court is not responsible for informing a defendant of all consequences flowing from a guilty plea, at a minimum the court must ensure that the defendant is made fully aware of those consequences that are "direct" or "penal." *State v. Howard,* 110 *N.J.* 113, 122, 539 *A.*2d 1203 (1988). The requirement that the court be satisfied in that respect serves several salutary ends. It avoids having a defendant enter into a plea hampered by being "misinformed . . . as to a material element of a plea negotiation,

---

[1] The State informed the Court at oral argument that after defendant entered his plea, the standard plea form was revised to include a specific question in respect of the applicability of the period of parole supervision required by NERA.

which [he] has relied [on] in entering his plea." *State v. Nichols,* 71 *N.J.* 358, 361, 365 *A.*2d 467 (1976). As a collateral matter, the entire criminal justice system's interest in finality is advanced. Clarity as to the direct and penal consequences of a defendant's guilty plea promotes the binding resolution of charges because it serves to ensure that a defendant's "expectations [are] reasonably grounded in the terms of the plea bargain." *State v. Marzolf,* 79 *N.J.* 167, 183, 398 *A.*2d 849 (1979).

■ In respect of the public interest in final and binding proceedings, the Court Rules permit a court to vacate a guilty plea after sentencing only if withdrawal of the plea is necessary to correct a "manifest injustice." *R.* 3:21–1. That discretionary determination necessitates a weighing of " 'the policy considerations which favor the finality of judicial procedures against those which dictate that no man be deprived of his liberty except upon conviction after a fair trial or after the entry of a plea of guilty under circumstances showing that it was made truthfully, voluntarily and understandably.' " *State v. McQuaid,* 147 *N.J.* 464, 487, 688 *A.*2d 584 (1997) (quoting *State v. Herman,* 47 *N.J.* 73, 76–77, 219 *A.*2d 413 (1966)). Thus, if a defendant wishes to withdraw a guilty plea after sentencing has occurred, "the court weighs more heavily the State's interest in finality and applies a more stringent standard" than that which is applied to a withdrawal application made before sentencing has occurred. *Ibid.*

### III.

### A.

■ We turn now to whether there has been a manifest injustice entitling defendant to corrective relief under *Rule* 3:21–1. Defendant claims that his lack of knowledge about NERA's mandatory period of parole supervision requires that his plea be vacated. Initially, we must determine whether NERA's peculiar period of extended parole supervision should be considered a direct, penal consequence of defendant's plea.

The Legislature enacted NERA as a response to "New Jersey's alarmingly high rate of parolee recidivism." *State v. Thomas,* 166 *N.J.* 560, 569, 767 *A.*2d 459 (2001). NERA purposefully seeks "to 'increase prison time for offenders committing the most serious crimes in society.' " *Ibid.* (quoting Senate Law and Public Safety Committee, Statement to Senate Bill No. 855 (Apr. 24, 1996)). To reduce recidivism, NERA increases the real time period of incarceration of defendants who commit first- and second-degree "violent" crimes by requiring that such defendants serve at least eighty-five percent of the sentence imposed. *N.J.S.A.* 2C:43–7.2a. Moreover, NERA adds a mandatory period of post-release supervision:

Notwithstanding any other provision of law to the contrary and in addition to any other sentence imposed, a court imposing a minimum period of parole ineligibility of 85 percent of the sentence pursuant to this section shall also impose a five-year term of parole supervision if the defendant is being sentenced for a crime of the first degree, or a three-year term of parole supervision if the defendant is being sentenced for a crime of the second degree. The term of parole supervision shall commence upon the completion of the sentence of incarceration imposed by the court pursuant to subsection a. of this section ... During the term of parole supervision the defendant shall remain in release status in the community in the legal custody of the Commissioner of the Department of Corrections and shall be supervised by the State Parole Board as if on parole and shall be subject to the provisions and conditions of [*N.J.S.A.* 30:4–123.51b].

[*N.J.S.A.* 2C:43–7.2c.]

The full effect of *N.J.S.A.* 2C:43–7.2c subjects a NERA defendant to greater restraints after release from prison than otherwise would have applied to a non-NERA defendant. A NERA defendant convicted of a first-degree crime, for example, is required to serve a five-year period of supervised parole even if that period exceeds the length of the full sentence imposed. And, should a NERA defendant violate parole and be re-incarcerated, the result may be that he or she will serve more than the original term of the sentence. On the other hand, a non-NERA defendant could not be required to serve a period of parole that exceeds the "term specified in the original sentence." *N.J.S.A.* 30:4–123.65.

We have recognized that penal consequences attach to a loss of a parole opportunity and, accordingly, have required trial courts to establish on the record that a pleading defendant is aware of any

such loss that is part of the sentence to be imposed. *State v. Kovack,* 91 *N.J.* 476, 483, 453 *A.*2d 521 (1982). As we explained in *Kovack,* the colloquy that took place between the sentencing court and the defendant in that matter revealed that the defendant had no contemplation that there would be any period of parole ineligibility to his sentence. *Id.* at 480–81, 453 *A.*2d 521. Nonetheless, he was sentenced to a custodial term that included a minimum period of parole ineligibility. *Id.* at 480, 453 *A.*2d 521. Because the imposition of a period of parole ineligibility was "manifestly beyond" the defendant's contemplation, *id.* at 483, 453 *A.*2d 521, we held that although a court need not explain to a defendant what the parole opportunities are in general, in order to assure that a defendant understands the consequences of a plea "the court must make certain that [a] defendant has been made aware of any *loss* of parole opportunities that may be a component of the sentence." *Ibid.* The record in *Kovack* made it "abundantly clear" that the defendant had no such understanding and, consequently, the sentence was vacated. *Id.* at 484, 453 *A.*2d 521.

Thereafter, in *Howard, supra,* 110 *N.J.* at 118, 539 *A.*2d 1203, we addressed a similar circumstance that arose in the context of a sentence to the Adult Diagnostic and Treatment Center (Avenel). The defendant in *Howard* pled guilty to second-degree sexual assault with the understanding that the recommended sentence of seven years could carry a parole ineligibility period of three and one-half years. *Id.* at 118–19, 539 *A.*2d 1203. Immediately after accepting the plea, the trial court raised the possibility of defendant being sentenced to Avenel, and directed that defendant be evaluated. *Id.* at 119, 539 *A.*2d 1203. As a result thereof, the court sentenced defendant to seven years in Avenel. *Ibid.* Only then was the defendant informed that the parole eligibility for an Avenel sentence is indeterminate—release may occur only when the State Parole Board is satisfied that the "person is capable of making an acceptable social adjustment in the community." *Id.* at 119–20, 539 *A.*2d 1203 (citing *N.J.S.A.* 2C:47–5).

Defendant appealed his sentence, and we reaffirmed the principle that a trial court must ensure that a pleading defendant is

aware of any loss of parole opportunities that are part of a sentence. *Id.* at 123, 539 *A.*2d 1203 (reaffirming *Kovack* requirement). We noted that Avenel inmates are more likely than State Prison inmates to serve the entire term to which they are sentenced, and that "both the average and median lengths of stay for Avenel prisoners are significantly longer than the stays of State Prison inmates." *Id.* at 124, 539 *A.*2d 1203. We concluded that "[t]he trial court's failure to inform a defendant of the possibility of confinement at Avenel, [where one is] subject to a parole determination radically different from that applicable to other prisoners, can result in manifest injustice." *Ibid.*

Although not presenting a loss of a parole opportunity, the present appeal warrants consideration of the harsh consequences imposed on a defendant by NERA's mandatory period of parole supervision. Under *Kovack* and *Howard,* a defendant must be informed of such consequences. The NERA period of extended parole supervision is patently a direct consequence of a defendant's plea to a NERA-eligible offense. Moreover, the statute's required period of parole supervision has a penal impact.

Under NERA's mandatory period of parole supervision, the fixed period of a defendant's supervision may extend beyond the term of the original sentence.[2] Moreover, violation of that parole supervision could subject defendant to additional incarceration for a length of time that could make the custodial sentence, in the aggregate, far exceed the original sentence imposed as part of the plea bargain. Thus, the period of NERA parole supervision constitutes both a direct and penal consequence about which defendant, in his plea colloquy and plea form, was not informed.

We note with approval the Appellate Division's similar conclusion about the direct and penal consequences of NERA's mandato-

---

[2] Indeed, in defendant's case it will extend beyond his original sentence. Defendant is required to serve 12.75 years of his 15–year term of imprisonment before he is eligible for parole. If defendant is paroled at the earliest opportunity, the additional three years of parole supervision will result in a total aggregate sentence (15.75 years) that exceeds his original sentence.

ry period of parole supervision in *State v. Freudenberger*, 358 *N.J.Super.* 162, 167–70, 817 *A.*2d 371 (App.Div.2003). The court emphasized the difference between the NERA parole supervision provision and that which would be imposed for a non-NERA offense.

> For non-NERA offenses, when an inmate is released on parole, the length of parole supervision extends to the point at which the sentence would expire. If because of accumulation of credits the inmate "maxes out" before the conclusion of the specified sentence, the inmate is released before the expiration of the sentence without parole supervision. Of course, if the inmate serves the full sentence, release is without parole supervision. With a NERA sentence, however, regardless of when the inmate is released, he or she is subject to a fixed five-year term of parole supervision for first-degree crimes and three years for second-degree crimes.
>
> [*Id.* at 168–69, 817 *A.*2d 371.]

The court concluded that "[b]eing under parole supervision beyond the term of the imposed sentence is itself a significant penal consequence. More significant is the possibility that upon a parole violation a defendant could be required to serve additional time after expiration of the specified sentence." *Id.* at 169, 817 *A.*2d 371.

We hold that being subject to NERA's mandatory period of parole supervision constituted a direct, penal consequence of defendant's plea to three counts of second-degree aggravated assault. Furthermore, because defendant was not informed about the consequences of being subject to NERA's fixed period of parole supervision, we hold that he is entitled to seek the vacation of his plea.

### B.

A defendant seeking relief under *Rule* 3:21–1 also must show that the mistaken belief about, or lack of knowledge of, a penal consequence of a plea was material to the decision to plead guilty and prejudiced the defendant. In *Howard*, we explained that to vacate a plea, a "defendant must show not only that he was misinformed of the terms of the agreement or that the sentence violated his reasonable expectations, but also that he is prejudiced

by enforcement of the agreement." *Supra*, 110 *N.J.* at 123, 539 *A.*2d 1203. "[T]he plea will not be vacated if knowledge of the consequences would not have made any difference in the defendant's decision to plead." *Ibid.* After determining that the defendant in *Howard* should have been informed that a sentence to the Adult Diagnostic and Treatment Center for sex offenders subjects the offender to a period of parole eligibility "radically different" from that accorded State Prison inmates, we turned to the question of materiality. *Id.* at 124–25, 539 *A.*2d 1203. We noted that the defendant was not advised of the possibility of a period of parole ineligibility in connection with his sentence. *Id.* at 124, 539 *A.*2d 1203. Moreover, we were satisfied that his guilty plea was "obviously based on a careful calculation of the amount of time that he would be imprisoned." *Ibid.* Defendant's "immediate protest" upon learning of the parole ineligibility "besp[oke] the *materiality* of the omitted information to his decision to enter the plea agreement." *Id.* at 125, 539 *A.*2d 1203 (emphasis added). In sum, the record fairly broadcast the materiality of the omitted information and its importance in relation to defendant's decision to plead, and, with that showing, we allowed the vacation of defendant's plea. *Id.* at 125–26, 539 *A.*2d 1203.

To the extent that it has been argued that *Kovack* dispensed with any requirement that a defendant demonstrate a subjective materiality of the omitted information to the decision to plead, we disagree with that interpretation of *Kovack*. In *Kovack*, we considered a failure to provide any information about a period of parole ineligibility that, realistically, would be imposed on the defendant. The Court's focus was on the impact of the period of parole ineligibility on a pleading defendant who had no understanding or knowledge that such a period would apply. Our plea-reopening post-sentencing cases since *Kovack*, beginning immediately thereafter with *Howard*, have all considered the materiality of the omitted information to a defendant's decision to plead.[3] Its

---

[3] To the extent that the Appellate Division decision in *Freudenberger*, in permitting the defendant to vacate his plea, omitted an examination of materiality, we disapprove of its holding.

importance is clear—materiality has been treated as an essential factor in the equation when a defendant seeks to set aside a plea after sentencing.

Two years after *Howard*, in *State v. Kiett*, 121 *N.J.* 483, 484, 582 *A.*2d 630 (1990), we addressed a situation in which a defendant, under the misapprehension that the death penalty was applicable to juveniles, pled guilty to murder pursuant to a plea bargain that removed the risk of a death penalty. Notwithstanding that the potential imposition of a death sentence was "clearly" a penal consequence about which a defendant must be fully informed, *id.* at 489, 582 *A.*2d 630, we nonetheless tied the misinformation about death eligibility to a requirement that "[the] *misunderstanding [be] material to the plea*, [to determine whether] he or she cannot be deemed to have entered a guilty plea with a full understanding of the penal consequences." *Ibid. Howard, supra,* 110 *N.J.* at 123, 539 *A.*2d 1203, and *State v. Taylor,* 80 *N.J.* 353, 365, 403 *A.*2d 889 (1979), were cited for the proposition that a defendant "must show that his mistaken belief about penal consequences was a material factor in the decision to plead guilty." *Kiett, supra,* 121 *N.J.* at 490, 582 *A.*2d 630.

Seven years after *Kiett,* we addressed the subject again. *See McQuaid, supra,* 147 *N.J.* at 495, 688 *A.*2d 584 (noting that defendant must show "that his mistaken belief about the penal consequences to which he was exposed was a material factor in his decision to plead guilty" (citing *Kiett, supra,* 121 *N.J.* at 489, 582 *A.*2d 630)). *McQuaid* emphasizes the importance of the materiality requirement by stating that "[the] defendant must show that he was prejudiced by enforcement of the plea agreement ... [T]he plea will not be vacated if knowledge of the consequences would not have made any difference in the defendant's decision to plead." *Id.* at 495–96, 688 *A.*2d 584 (citing *Howard, supra,* 110 *N.J.* at 123, 539 *A.*2d 1203). We concluded that the defendant in *McQuaid* failed to demonstrate sufficient prejudice to allow him to withdraw his guilty plea to felony murder. *Id.* at 498, 688 *A.*2d 584. Although the misinformation about whether the charges rendered

him death-eligible undoubtedly contributed to the defendant's decision to plead guilty to felony murder, we held that the defendant did not show that sustaining the defendant's guilty plea worked a manifest injustice. *Id.* at 498, 688 *A*.2d 584. Because of the defendant's sentencing exposure (his "base sentence of forty years could have been increased to the equivalent of a life sentence with sixty years of parole ineligibility," *id.* at 497, 688 *A*.2d 584), we concluded that "the probability is overwhelming that [the] defendant would have accepted the plea bargain without regard to his death eligibility." *Id.* at 498, 688 *A*.2d 584.

We reiterate today that defendant must demonstrate how the omission of information about NERA materially affected his decision to plead guilty. To demonstrate a manifest injustice, defendant must show that the lack of information prejudiced him in making his decision to plead. From our perspective on appeal, we cannot tell whether knowledge about imposition of NERA's fixed term of parole would have made a difference to defendant, such as we were able to discern in *Howard.* Defendant must be allowed the opportunity to make that demonstration. Therefore, it is necessary to remand this matter to the trial court to allow defendant a materiality hearing on his application under *Rule* 3:21–1. If, on remand, the trial court determines that the plea agreement must be rejected, the defendant will have three options. Defendant may: (1) renegotiate the plea agreement, if the State is willing to do so; (2) withdraw his guilty plea (subject to reinstatement of the dismissed counts) and proceed to trial; or (3) withdraw the motion to be resentenced and accept reimposition of the original sentence. *Kovack, supra,* 91 *N.J.* at 485, 453 *A*.2d 521.

## IV.

The judgment of the Appellate Division is reversed and the matter is remanded to the Law Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE, and RIVERA–SOTO—7.

*Opposed*—None.