# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4737-15T1

STATE OF NEW JERSEY
IN THE INTEREST OF
M.D., a juvenile.

_____

Argued April 11, 2018 – Decided September 28, 2018

Before Judges Alvarez, Nugent, and Currier.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FJ-16-1234-14.

Brian P. Keenan, Assistant Deputy Public Defender, argued the cause for appellant M.D. (Joseph E. Krakora, Public Defender, attorney; Brian P. Keenan, of counsel and on the brief).

Robert J. Wisse, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Camelia M. Valdes, Passaic County Prosecutor, attorney; Robert J. Wisse, of counsel and on the brief).

Natalie J. Kraner argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, Lowenstein Sandler LLP, and Criminal & Youth Justice Clinic Rutgers, attorneys; Rebecca Livengood, Edward L. Barocas, Jeanne LoCicero, Scott

B. McBride, Natalie J. Kraner, and Laura Cohen, on the brief).

PER CURIAM

Effective September 1, 2018, an amendment to Rule 5:21A supplemented and relaxed the use of a Confidential Juvenile Plea Form (CN11144), to require it "in all juvenile delinquency cases in which the judge accepts a plea."[1] This appeal will hopefully be the last taken by a juvenile who entered a plea of guilty without being advised regarding the actual length of his term of commitment, the equivalent of adult incarceration, that might result. That consequence in this case is, at least in part, attributable to the lack of a written plea form.

M.D., a juvenile, appeals the denial of his motion to withdraw his guilty plea. He was committed by the State Parole Board (Board), pursuant to N.J.S.A. 2A:4A-44(d)(5), to a term equal to one-third of the years of confinement to the State Home for Boys imposed when he was sentenced. It is undisputed that when he entered the guilty plea years earlier, neither he nor his attorney knew about the existence of the statute authorizing this significant penal consequence for a violation of parole conditions. The judge did not review that potential with

---

[1] Notice to the Bar: Order – Relaxation of Rule 5:21A to Make Use of Juvenile Plea Form Mandatory in All Juvenile Delinquency Cases (July 17, 2018), available at https://www.njcourts.gov/notices/2018/n180731a.pdf?cacheID=veVuUFF.

him at any time. M.D. has completed service of his sentence. We nonetheless address one of the issues he raises because it is of significant public consequence, is "capable of repetition," and may nonetheless evade review. See State v. Gartland, 149 N.J. 456, 464 (1997); N.J. Div. of Youth & Family Servs. v. J.B., 120 N.J. 112, 118-19 (1990).

I.

M.D.'s prior juvenile history is relevant. His record in particular mandated that M.D. be advised of all pertinent sentencing consequences before pleading guilty since he was likely to violate conditions of parole. M.D., who was born in January 1997, was first placed on probation for simple assault, N.J.S.A. 2C:12-1(a)(1), on January 31, 2013, when he was sixteen years old. Thereafter, on November 7, 2013, M.D. appeared in court on charges of violating his probation as well as conspiracy to possess heroin, N.J.S.A. 2C:5-2. He was again placed on probation for eighteen months with conditions. On March 21, 2014, when he was seventeen years old, M.D. was charged with violating his probation for failure to adhere to conditions, and on April 14 of that year, he was also charged with second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1), and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b).

A-4737-15T1

M.D. entered guilty pleas to the probation violation and unlawful possession of a weapon charge. In accord with the plea agreement explained to him on the record, albeit not reduced to writing, he was to be sentenced to concurrent terms of twenty-four months at the State Home for Boys.

During the May 29, 2014 disposition hearing, the judge reviewed M.D.'s juvenile history, which included contacts with law enforcement as early as 2009 when he was twelve years old, and his multiple violations of probation. The order of disposition stated that "a term of post-incarceration supervision [PIS] equivalent to one-third of the term of incarceration" in accord with N.J.S.A. 2A:4A-44(d)(5) was also imposed.

During the proceeding, however, just as when the juvenile pled guilty, no one mentioned the following statute:

> Every disposition that includes a term of incarceration shall include a term of [PIS] equivalent to one-third of the term of incarceration imposed. During the term of [PIS] the juvenile shall remain in the community and in the legal custody of the Juvenile Justice Commission . . . in accordance with the rules of the parole board, unless the appropriate parole board panel determines that [PIS] should be revoked and the juvenile returned to custody . . . . The term of [PIS] shall commence upon release from incarceration or parole, whichever is later. A term of [PIS] imposed pursuant to this paragraph may be terminated by the appropriate parole board panel if the juvenile has made a satisfactory adjustment in the

4

> community while on parole or under such supervision
> . . . .
>
> [N.J.S.A. 2A:4A-44(d)(5).]

Due to institutional disciplinary infractions committed while serving his sentence, M.D. was required to complete the entire twenty-four months of commitment. He was released on November 11, 2015, and began his statutory eight-month PIS term, subject to conditions of parole. Within days, he was charged with violating parole conditions.

A warrant issued for M.D.'s arrest. A revocation hearing followed once M.D. was taken into custody on December 22, 2015. A hearing officer found he violated his conditions by failing to attend or participate in any treatment programs, and was "a risk of flight and would likely avoid supervision again if released." Accordingly, the hearing officer returned M.D. to custody for the remainder of the PIS period. A Parole Board juvenile panel adopted the decision, concluding the State had proven by clear and convincing evidence that M.D. violated the PIS conditions.

M.D. filed a motion for reconsideration of the hearing officer's disposition in the Family Part. He contended that he was being held unlawfully past the court-ordered permissible term since he had completed his twenty-four-month sentence. The judge who heard the matter directed the Attorney General's Office

to appear, as they had not participated to that point, and, pending the next court date, she ordered M.D.'s release.

At the subsequent hearing, M.D.'s counsel argued that the family court had jurisdiction to modify M.D.'s disposition. Counsel also argued that because M.D. was unaware of the PIS aspect of his sentence, his plea was neither knowing nor intelligent, and that he should therefore be granted leave to withdraw it.

The Attorney General responded that the court lost jurisdiction over the juvenile once M.D. completed his twenty-four-month sentence and was paroled. Only the Parole Board juvenile panel could revoke his PIS, and that decision was appealable only to the full board, and thereafter only to the Appellate Division. The Family Part judge agreed she had no jurisdiction over the matter, vacated her prior order, and ordered M.D. returned to the custody of the Juvenile Justice Commission. She scheduled a later motion date for argument on M.D.'s application to withdraw his plea.

The motion to withdraw the guilty plea was heard by a different judge on May 23, 2016. M.D.'s attorney acknowledged he did not know about the PIS consequence when he represented M.D., nor did he advise the juvenile about it. The judge nonetheless denied the application based on M.D.'s failure to meet

the four-prong test for the withdrawal of guilty pleas enunciated in State v. Slater, 198 N.J. 145, 157-58 (2009), and the fact that PIS was mandatory. He ordered M.D. back to the State Home for Boys to serve the remainder of his eight-month post-incarceration term pursuant to the statute. This increased M.D.'s commitment from the twenty-four months called for by the plea, about which he was informed, to thirty-two months, about which he had been told nothing.

M.D. now raises two points on appeal:

> POINT I
> THE MOTION JUDGE ERRED IN DENYING M.D.'S MOTION TO WITHDRAW HIS PLEA WHERE THERE WAS NO WRITTEN PLEA AGREEMENT AND HE WAS NOT PREVIOUSLY INFORMED ABOUT THE [PIS] PORTION OF HIS DISPOSITION.

> POINT II
> THE MOTION JUDGE ERRED IN DETERMINING THAT SHE LACKED JURISDICTION TO ALTER M.D.'S DISPOSITION WHILE HE WAS STILL SERVING THE [PIS] PORTION OF HIS DISPOSITION.

The American Civil Liberties Union of New Jersey (ACLU) has filed an amicus curiae brief setting forth the following arguments:

I. THIS COURT SHOULD NOT DISMISS THIS APPEAL AS MOOT, BUT SHOULD ADDRESS THE MERITS OF THIS CASE BECAUSE THE ISSUES BEFORE THE COURT ARE OF GREAT PUBLIC IMPORTANCE AND ARE CAPABLE OF REPETITION WHILE EVADING REVIEW.

II. THE CURRENT PRACTICE OF PLACING YOUNG PEOPLE IN HALFWAY HOUSES RATHER THAN RELEASING THEM TO THE COMMUNITY WHEN THEIR INCARCERATORY TERMS ARE OVER VIOLATES DUE PROCESS AND THE JUVENILE CODE.

    A. Requiring Individuals to Enter Halfway Houses as a Condition of Release Violates the Statutory Requirements and Goals of the Juvenile Code.

    B. Requiring Individuals to Enter Halfway Houses as a Condition of [PIS] Violates Due Process.

III. A MANDATORY TERM OF POST-INCARCERATION SUPERVISION VIOLATES THE PRINCIPLE THAT JUVENILE SENTENCING REQUIRES INDIVIDUAL REVIEW AND DEPRIVES THE JUVENILE OF DUE PROCESS AND FUNDAMENTAL FAIRNESS.

A. Under <u>Miller v. Alabama</u> and Traditional Due Process Principles, Individualized Consideration Is Constitutionally Required for Assigning a Period of [PIS] to Juveniles During Sentencing.

B. The Automatic Imposition of [PIS] Offends Fundamental Fairness.

IV. THE FAMILY PART RETAINS JURISDICTION OVER A JUVENILE'S SENTENCE DURING THE PERIOD OF [PIS] IMPOSED PURSUANT TO N.J.S.A. § 2A:4A-45.

We address the ACLU's Points I and IV only. Amici curiae cannot independently raise issues not argued by the parties in the case. <u>State v. J.R.</u>, 227 N.J. 393, 421 (2017) (citation omitted).

## II.

Courts allow the withdrawal of a guilty plea after sentencing to correct a "manifest injustice." <u>R.</u> 3:21-1.[2] A judge's exercise of discretion in deciding such motions is ordinarily governed by the four-factor test enunciated in <u>Slater</u>,

---

[2] <u>Rule</u> 5:1-1 states: "[j]uvenile delinquency actions shall be governed by the rules in Part III insofar as applicable and except as otherwise provided by the rules in Part V." This includes <u>Rule</u> 3:9-2 and relevant case law. <u>See</u> e.g. <u>State in the Interest of J.R.</u>, 244 N.J. Super. 630, 638 (App. Div. 1990) (procedural requirements for an adult guilty plea apply to guilty pleas in the juvenile court.); <u>State in the Interest of G.W.</u>, 206 N.J. Super. 50, 54 (App. Div. 1985) (<u>Rule</u> 3:9-2 permits a judge to reject a guilty plea by an adult, thus the same discretion is vested in a juvenile court judge.).

198 N.J. at 157-58: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused."

But a judge presented with a plea must first elicit testimony demonstrating that it is "supported by a factual basis and . . . entered voluntarily and knowingly, that is, with a full understanding of the charge and the consequences of the plea." Id. at 154-55. Unless the requirements of Rule 3:9-2 are met, a plea should be rejected. This includes reviewing the consequences with a defendant to ensure a complete understanding of the penal consequences. Ibid.

For this reason, the Slater analysis is not reached where the factual basis for the plea is inadequate. See State v. Tate, 220 N.J. 393, 404-05 (2015).

In a case decided a few months after Slater, in the context of post-conviction relief, the Supreme Court held ineffective assistance of counsel is established when a defendant is misadvised regarding the immigration consequences of a guilty plea. Where a defendant "would not have pled guilty but for the inaccurate information from counsel . . ." the Court allowed the withdrawal and reinstated the matter for trial. State v. Nunez-Valdez, 200 N.J. 129, 143 (2009).

10

A juvenile, like an adult, is entitled to be advised and to understand any "direct" or "penal" consequences flowing from a guilty plea. State ex rel. B.P.C., 421 N.J. Super. 329, 354 (App. Div. 2011) (citing State v. Johnson, 182 N.J. 232, 236 (2005)). In B.P.C., the issue was whether two juveniles were entitled to notification that their guilty pleas would subject them to Megan's Law registration requirements. See N.J.S.A. 2C:7-2(b)(2). Id. at 335-36. Because neither had been advised regarding Megan's Law, one juvenile's matter was remanded for the judge to conduct a post-conviction relief hearing regarding ineffective assistance of counsel. The other juvenile's matter was remanded to afford him the opportunity, assuming he could establish the omission was material to his decision to plead guilty, to withdraw his guilty plea. Id. at 337, 356.

Hence the judge in this case should not have automatically applied the Slater factors to M.D.'s motion. M.D. was not informed of a very significant penal consequence. His plea was therefore not knowing, as Rule 3:9-2 mandates. The judge should have given the juvenile the opportunity to demonstrate the undisputed omission had a material effect on his decision to plead. After all, in this case, the effect of the statute was to increase his potential

11

time of commitment by one-third. That would seem, on its face, to at least suggest the omission was material.

Further, the judge who mistakenly denied M.D.'s motion to withdraw his plea because of M.D.'s failure to satisfy the Slater analysis, also mistakenly held that because PIS is mandatory, M.D. need not have been advised about it before waiving his right to a trial. Rule 3:9-2, however, requires that a court establish the knowing and voluntary nature of a plea before it is accepted, regardless of whether the significant consequences are mandatory or not. See Tate, 220 N.J. at 397. It is self-evident that a waiver is knowing only if made on complete information, anchored in a full understanding of the significant consequences. Whether the consequences are mandatory is irrelevant—they must be made known.

Unfortunately for M.D., he has long since completed his sentence, and our decision does not affect him. In the hopes of clarifying that the requirements of Rule 3:9-2 act as the foundation for application of the Slater factors, we have addressed this point on appeal. M.D. should have been afforded the opportunity to demonstrate the omission was material to his decision and prejudiced him. Johnson, 182 N.J. at 237-44. Once having made the requisite showing, he should have been afforded the opportunity to (1) negotiate the plea agreement; (2)

withdraw his guilty plea and try the matter; or (3) withdraw the motion and accept the original sentence. See B.P.C., 421 N.J. Super. at 356.

In his second point, M.D. contends that the judge who denied his application to modify the Parole Board's disposition erred. The ACLU joins in seeking clarification on the issue. We discuss it very briefly, as it lacks substantial merit. See R. 2:11-3(e)(2).

The proper procedure, once M.D. was resentenced by the Parole Board juvenile panel, was for him to file an administrative appeal to the full board, pursuant to N.J.A.C. 10A:71-4.1(e). Had M.D. disagreed with the full board's decision, a final agency decision, a notice of appeal to the Appellate Division would have been the next step pursuant to Rule 2:2-3(a)(2). State parole board decisions are reviewable only by a direct appeal to our court. State, Parole Board v. McNair, 131 N.J. Super. 522, 526 (App. Div. 1974).

We do not dispute that N.J.S.A. 2A:4A-45(a) provides continuing jurisdiction by the Family Part over a sentenced juvenile. That provision does not apply to a parole board decision, however, but to juveniles who are civilly committed, and to the family court's use of county juvenile detention facilities.

Dismissed as moot.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4737-15T1