**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3067-17T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

EARL A. BURNETT, a/k/a
SCOOTER BURNETT, OZ
BURNETT, EARLASMAAD
BURNETT, and EARL JR.,

      Defendant-Appellant.

_____

Argued October 10, 2019 – Decided December 3, 2019

Before Judges Koblitz, Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 14-04-0437.

Margaret Ruth McLane, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Margaret Ruth McLane, of counsel and on the brief).

Randolph E. Mershon III, Assistant Prosecutor, argued the cause for respondent (Angelo J. Onofri, Mercer

County Prosecutor, attorney; Randolph E. Mershon III, of counsel and on the brief).

PER CURIAM

On October 4, 2010, defendant waived his right to indictment and trial by jury and entered a negotiated guilty plea to an accusation charging him with third-degree conspiracy to commit theft, N.J.S.A. 2C:5-2(a) and 2C:20-3(a) (the accusation). In his plea allocution, defendant admitted that on October 30, 2008, in the city of Trenton, he agreed with others to commit a theft by serving as the getaway driver. On November 18, 2010, the trial court sentenced defendant in accordance with the plea agreement to three years' probation, conditioned upon time served in the county jail, totaling 353 days.

Less than two years later, on January 17, 2012, defendant and others were charged in a Mercer County indictment with third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1) and 2C:2-6 (count one); second-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1), 2C:35-5(b)(2), and 2C:2-6 (count two); second-degree possession of a CDS with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1, 2C:35-5(a)(1), 2C:35-5(b)(2), and 2C:2-6 (count three); and second-degree possession of firearms while committing CDS crimes, N.J.S.A. 2C:39-4.1(a) (count four) (the 2012 indictment). On May 24, 2012, defendant

A-3067-17T1

entered a negotiated guilty plea to count two, as amended to charge a third-degree offense, as well as to a violation of probation (VOP) on the accusation. In his plea allocution, defendant admitted that on August 12, 2011, in the city of Trenton, he possessed cocaine with intent to distribute. On July 12, 2012, the court sentenced defendant in accordance with the plea agreement to three years' probation conditioned upon time served in the county jail, totaling 231 days, concurrent to continued probation on the accusation.

A few months later, on November 7, 2012, defendant was arrested and charged in two separate indictments with various drug, firearm, and witness tampering related offenses. However, those indictments were dismissed (the dismissed indictments) contemporaneous with the return of a ninety-three-count superseding indictment on April 11, 2014, charging defendant and others with various offenses, including first-degree racketeering, N.J.S.A. 2C:41-2(c), and first-degree gang criminality, N.J.S.A. 2C:33-29 and 2C:2-6 (the racketeering indictment). The racketeering charge encompassed the conduct charged in the accusation and the 2012 indictment, for which defendant had previously been convicted and sentenced.

On October 6, 2017, defendant entered a negotiated guilty plea to the racketeering charge, as well as VOPs on the accusation and the 2012 indictment.

On November 17, 2017, when defendant appeared for sentencing on the racketeering indictment, the court rejected defendant's argument that he was entitled to jail credit on the racketeering charge for the time accrued on the accusation and the 2012 indictment. Instead, the court sentenced defendant to a twelve-year term of imprisonment, subject to the eighty-five percent parole ineligibility provisions of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and awarded 1836 days of jail credit accrued since his arrest on November 7, 2012, omitting the combined 584 days previously served on the accusation and the 2012 indictment. Additionally, the court terminated defendant's probation on the accusation and the 2012 indictment, and sentenced him to time served on each.

Defendant now appeals from the November 27, 2017 conforming judgment of conviction, raising the following points for our consideration:

> POINT I
>
> BECAUSE THE PRIOR OFFENSES WERE SPECIFICALLY INCORPORATED INTO THE RACKETEERING INDICTMENT, THE JAIL CREDITS FROM THOSE PRIOR OFFENSES ALSO HAD TO BE INCORPORATED IN THE RACKETEERING SENTENCE.

POINT II

IF DEFENDANT IS NOT ENTITLED TO JAIL CREDITS, THEN HE MUST BE AFFORDED THE OPPORTUNITY TO WITHDRAW HIS GUILTY PLEA. (NOT RAISED BELOW).

For the reasons that follow, we agree that defendant should be given the option to withdraw his guilty plea. Accordingly, we vacate the racketeering conviction and remand.

The racketeering charge alleged "criminal activity and conspiracy," occurring from about October 24, 2008, to April 4, 2013, in the city of Trenton. The enterprise was the "793 Bloods set," whose "activities" allegedly "affected trade or commerce in . . . New Jersey." Among the overt acts delineated in the racketeering charge were allegations contained in paragraphs (a) through (c) that "[o]n or about October 30, 2008," defendant and others "in the course of committing a theft, purposely put" seven individuals "in fear of immediate bodily injury while armed with a . . . firearm, contrary to the provisions of [N.J.S.A. 2C:15-1 and 2C:2-6]." Similarly, the allegations contained in paragraph (r) alleged that "[o]n or about August 12, 2011," defendant and others "knowingly or purposely possess[ed] . . . with intent to distribute . . . cocaine, in a quantity of one-half ounce or more but less than five ounces, . . . contrary to the provisions of [N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(2)]."

A-3067-17T1

At the plea hearing on the racketeering charge, defendant admitted that between October 24, 2008 and April 4, 2013, he was a member of the 793 Bloods set, which engaged in criminal activities in the Trenton area affecting trade and commerce in New Jersey. Specifically, defendant admitted he participated in the enterprise by supplying and distributing "[c]rack cocaine[,]" by providing "[h]andguns" to other members of the enterprise, and by conspiring with others to commit "robberies" and "burglaries."

Regarding the terms of the plea agreement, defendant acknowledged that in addition to the State recommending a twelve-year NERA sentence and dismissal of the remaining counts of the racketeering indictment, as well as time served on the accusation and the 2012 indictment, he would receive all the jail credits to which he was entitled. When defendant questioned whether the time he served on the accusation and the 2012 indictment would count towards his sentence on the racketeering charge, the following extended colloquy ensued:

> [COURT]: But I think he's asking, let's say conspiracy, [which] is like the oldest of the three charges, he can't get jail credit on the racketeering unless - - was this drug charge part of the racketeering?
>
> [PROSECUTOR]: He's going to get - -
>
> [DEFENDANT]: Yes.

6

[PROSECUTOR]: He's going to get credit, Judge, on the violation portion of all of these credits. . . . [O]bviously, not on . . . any time that he did previously, right, because that time's done as to that previous offense, but . . . the violations themselves, he's been picked up on those violations this whole time. So he gets all that credit.
All the credit he can get, he's going to get.

[COURT]: Okay. But he could foreseeab[ly] have more jail credit on the VOPs than the racketeering, correct?

[DEFENDANT]: No, no. What I'm asking - -

[PROSECUTOR]: No.

[COURT]: No?

[DEFENDANT]: You gave me probation, Judge.

[COURT]: Okay. I - -

[PROSECUTOR]: He was on probation, Judge. He wasn't - - he got - - so, he's - -

[COURT]: Oh. Oh, okay. Okay.

[DEFENDANT]: So, so, so, so, what I want to know is - -

[COURT]: So what I didn't know whether - - you know, you had a few days in jail before you made bail on these VOPs.

[DEFENDANT]: Yes.

[COURT]: That's what I - - he won't - -

[PROSECUTOR]:  On the VOPs, yes.

[COURT]:  Yes.  So, he may have a few more days on the VOPs than the actual jail credit on the racketeering, I - -

[PROSECUTOR]:  I don't think he does.

[COURT]:  - - don't know.

[PROSECUTOR]:  I don't - - no.  I - -

[DEFENSE COUNSEL]:  The VOPs were filed after - -

[PROSECUTOR]:  The VOPs are filed after, Judge.

[COURT]:  Oh, they were?

[PROSECUTOR]:  Yes.  They were filed as a result of this.

[COURT]:  Okay.

[PROSECUTOR]:  He just wants to make sure he doesn't lose that time.  So all of his - -

[DEFENDANT]:  Yeah, I want to make sure I got all those times - - like, I was locked up 2011, then I came - -

[PROSECUTOR]:  Yeah.  He got - -

[DEFENDANT]:  -- home 2012.

[PROSECUTOR]:  You got '11, you have '12 --

[DEFENDANT]:  Yeah.

[PROSECUTOR]:   - - you have - - you're in and out - -

[DEFENDANT]:  Yeah.

[PROSECUTOR]:   - - and in and out, all that credit comes in.

[DEFENDANT]:  Thank you.  That's all I wanted to know.

[PROSECUTOR]:  That's like - - Judge, I want to say it's almost six years that's he[] - - already has in.[1]

[DEFENDANT]:  That's all I wanted to know.

Prior to sentencing, defense counsel submitted a sentencing memorandum to the court, arguing that defendant was entitled to an additional 584 days of jail credit for time served on the accusation and the 2012 indictment, both of which were predicate acts and constituted elements of the racketeering charge.  At the sentencing hearing, defense counsel asserted the State could have omitted those predicate acts from the racketeering charge.  However, he argued that by "[leaving] them in," defendant was entitled to the credits under State v. Hernandez, 208 N.J. 24, 28 (2011), overruled in part on other grounds, State v. C.H., 228 N.J. 111 (2017).  Defense counsel asserted that "[o]therwise,

---

1  Six years would amount to 2190 days of jail credit.  Instead, defendant received 1836 days of jail credit, representing approximately five years.

[defendant] . . . [was] being basically punished twice for similar acts, but . . . not given the credit in jail."

In addressing the court, defendant stated under oath that "[o]ne of the reasons . . . [he] took [the] plea . . . [was] because [he] was . . . under the impression . . . [he] was getting all [his] credit." The court acknowledged it reviewed the discussion about jail credits during the plea hearing, and found the discussion "somewhat confusing[.]" Nonetheless, the court rejected defendant's argument, concluding there was "no basis in the law that . . . entitled" defendant to the additional "jail credit."

The court explained:

> This is somewhat unique in that it's a racketeering case and the [c]ourt could find no specific case on point and I don't think counsel in their legal memorandum found any, but what is clear is that I think the State has given . . . defendant[] all the credits that they promised he would get in the sense that the racketeering indictment was returned on April 11[], 2014.
>
> Normally, you don't get credits before that date, but the [p]rosecutor and the [c]ourt agree[] he's entitled to jail credits starting a year and a half before that, namely, November 7[], 2012, . . . through today [November 16, 2017].
>
> That totals [1836] days and the reason the State and this [c]ourt is giving him jail credits from before [is] because . . . he was put in custody on November 7[], 2012 [on the dismissed indictments].

10

. . . .

Defendant is asking for additional credits that go back on the [2012 indictment] to August 2011. He is asking on [the accusation] for jail credits that go back to October 30[], 2008.

. . . .

Basically, the [c]ourt finds . . . defendant is entitled to jail credits on any prior cases if he was in custody while those cases were officially pending and that's how I interpret [Rule] 3:21-8 regardless of any connection . . . of that crime to any past charges. Defendant cannot get jail credit for any offense until he is officially charged.

. . . I know the argument is, well, later, the [p]rosecutor used those two cases among many others, . . . with the racketeering [charge] but the [c]ourt finds that does not mean he's entitled to jail credits.

After defendant was sentenced, he reiterated to the court that "the promise that was made [was] not being abided by." He stated he would not have accepted the plea agreement if he knew he would not "get all [his] credits," and, prior to sentencing, he had informed his attorney that "[he] was willing to take [his] plea back" if he did not get the jail credits. The court responded defendant was not promised "jail credits going back to 2008[.]" This appeal followed.

On appeal, defendant renews his argument that he is entitled to "additional jail credits" for "the time [he] spent in jail" on the "two prior offenses" the State

11

"incorporated" as "elements of the racketeering offense." Defendant asserts "[d]enying [him] credit for the time he spent in jail for charges included in the racketeering offense would violate fundamental fairness because [he] would be punished twice for the same offenses" as "a consequence of the State's charging decision[.]" In the alternative, defendant asserts he "must be given the opportunity to withdraw his plea" as permitted under State v. Kovack, 91 N.J. 476, 485 (1982).

We disagree with defendant's contention that he is entitled to jail credits on his racketeering sentence for time served on convictions entered before he even incurred the racketeering charge. Rule 3:21-8 provides that "[t]he defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail . . . between arrest and the imposition of sentence." In Hernandez, our Supreme Court interpreted Rule 3:21-8 to require that defendants receive jail credits "against all sentences 'for any time served in custody in jail . . . between arrest and the imposition of sentence' on each case." 208 N.J. at 28 (quoting R. 3:21-8). "When [Rule 3:21-8's] preconditions for the application of jail credits are satisfied, the award of such credits is mandatory, not discretionary." Id. at 37.

Here, Rule 3:21-8's preconditions have not been met. "[J]ail credits further equal protection and fundamental fairness considerations by preventing the 'double punishment' of defendants who spend time in custody prior to sentencing." C.H., 228 N.J. at 117 (quoting State v. Rawls, 219 N.J. 185, 193 (2014)). Thus, while a defendant "is entitled to credit against the sentence for every day defendant was held in custody for that offense prior to sentencing[,]" Hernandez, 208 N.J. at 37, a defendant is not entitled to jail credit on future convictions for time served on past convictions. After a defendant has served a sentence, he is not entitled to receive jail credit accrued and applied to the prior conviction on a subsequent conviction at a future date. "[A] defendant accrues and is entitled to jail credits for time spent in custody" on "pending charges[.]" Id. at 47. The racketeering charge was not pending when defendant completed the custodial portion of his prior probationary sentences.

We view this case as implicating principles of double jeopardy, rather than jail credit. However, defendant has not raised double jeopardy in this appeal, and we do not address issues not raised. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived."). Nonetheless, the unusual posture of this case lends credence to defendant's argument that he should be given the option to withdraw his guilty

13

plea because he expected to receive the additional jail credit under the terms of the plea agreement.

"A guilty plea may be accepted as part of a plea bargain when the court is assured that the defendant enters into the plea knowingly, intelligently and voluntarily." State v. Johnson, 182 N.J. 232, 236 (2005) (citing R. 3:9-2). "For a plea to be knowing, intelligent and voluntary, the defendant must understand the nature of the charge and the consequences of the plea." Ibid. "Although a court is not responsible for informing a defendant of all consequences flowing from a guilty plea, at a minimum the court must ensure that the defendant is made fully aware of those consequences that are 'direct' or 'penal.'" Ibid. (quoting State v. Howard, 110 N.J. 113, 122 (1988)). "Obviously, this is best accomplished by the court satisfying itself, through specific question[s] and answer[s]," during the plea colloquy. Kovack, 91 N.J. at 484.

"The requirement that the court be satisfied in that respect serves several salutary ends. It avoids having a defendant enter into a plea hampered by being 'misinformed . . . as to a material element of a plea negotiation, which [he] has relied [on] in entering his plea.'" Johnson, 182 N.J. at 236-37 (quoting State v. Nichols, 71 N.J. 358, 361 (1976)). Any such misunderstanding or "mistaken belief" on the part of a defendant must be "a material factor in the decision to

plead guilty." State v. Kiett, 121 N.J. 483, 490 (1990). Thus, "[c]larity as to the direct and penal consequences of a defendant's guilty plea promotes the binding resolution of charges because it serves to ensure that a defendant's 'expectations [are] reasonably grounded in the terms of the plea bargain.'" Johnson, 182 N.J. at 237 (quoting State v. Marzolf, 79 N.J. 167, 183 (1979)).

Furthermore, "[i]t is fundamental that when a defendant pleads guilty pursuant to a plea agreement, the terms of the agreement must be fulfilled." Kovack, 91 N.J. at 482. Indeed, "[t]he terms of the plea agreement[] must be meticulously adhered to, and a defendant's reasonable expectations generated by plea negotiations should be accorded deference." Ibid. (quoting State v. Brockington, 140 N.J. Super. 422, 427 (App. Div. 1976)). When this does not occur, one of the appropriate remedies is for defendant to be given the option to "withdraw his guilty plea subject to reinstatement of the dismissed counts and proceed to trial." Id. at 485.

Here, defendant asserts his misunderstanding about the jail credits justifies allowing him to withdraw his guilty plea. In State v. Alevras, 213 N.J. Super. 331 (App. Div. 1986),

> [w]e acknowledge[d] that, at least in certain circumstances, a defendant's misunderstanding of credits may affect his understanding of the maximum exposure. Hence, a guilty plea based on this

misunderstanding may fail to satisfy the constitutional requirement that a plea be voluntarily, intelligently and knowingly entered, at least where the denial of the expected credits results in the imposition of a sentence longer in duration than the maximum contemplated.

[Id. at 338.]

We noted that "[t]his would be particularly true if a misunderstanding not clarified during the plea colloquy had an impact on [the defendant's] decision to enter the guilty plea." Id. at 338-39.

Our review of the transcripts of the plea and sentencing hearings leads to the inescapable conclusion that defendant believed he would be awarded the additional jail credits as part of the plea agreement, and his misunderstanding was not clarified during the plea colloquy. Even the judge acknowledged that the plea hearing was "confusing." Accordingly, we vacate defendant's conviction on the racketeering indictment, and remand for defendant to be given the option to "withdraw his guilty plea subject to reinstatement of the dismissed counts and proceed to trial." Kovack, 91 N.J. at 485.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16                                                                A-3067-17T1